**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| Louis Okon, | ) | |
| | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | JURY TRIAL REQUESTED |
| v. | ) | |
| | ) | |
| Hide–A–Way Lake Club, Inc., | ) | INJUNCTIVE RELIEF REQUESTED |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT**

COMES NOW, Plaintiff LOUIS OKON ("Okon" or "Plaintiff"), complaining of Defendant HIDE-A-WAY LAKE CLUB, INC. (the "Club"), and in support alleges and pleads the following:

## I.  JURISDICTION AND VENUE

1.      This action raises questions under the Constitution of the United States and 42 U.S.C. § 1983, and further asserts a claim for declaratory judgment under Federal Rule of Civil Procedure 57. Thus, this Court has jurisdiction over all claims for relief pursuant 28 U.S.C. § 1331.

2.      The causes of action and/or claims for relief asserted herein, to the extent they are premised upon state laws, are subject to this Court's supplemental jurisdiction pursuant to  28 U.S.C. § 1367.

3.      Jurisdiction is also conferred upon this Court by 28 U.S.C. § 1343(a)(3) and (4),  28 U.S.C. §§ 2201 and 2202, and  42 U.S.C. §§ 1983 and 1998, this being an action

for declaratory and temporary, preliminary, and permanent injunctive relief authorized by law to redress deprivations under color of law of rights, privileges and immunities secured by the Constitution of the United States.

4.     At all times pertinent to this Complaint, and in taking all of the actions described in this Complaint, Defendant acted under color of law and was effecting the custom and policy of the City of Hideaway, Texas.

5.     Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because Defendant's principal place of business is in this district, the acts and/or omissions giving rise to the claims asserted herein occurred in this district, and because the real property at issue is located in this district.

## II.     PARTIES

6.     Plaintiff is an individual and a resident and a citizen of the State of Texas. Okon owns real property located at 1383 Hideaway Lane West, Hideaway, Texas 75771.

7.     The Club is a Texas nonprofit corporation with its principal office at 101 Hideaway Lane Central, Hideaway, Texas 75771. As explained herein, the Club operates as a state actor under color of law.

## III.     CONDITIONS PRECEDENT

8.     All conditions precedent to Plaintiff's right to recovery under all claims for relief set forth herein have been performed and/or occurred and/or were waived prior to the filing of this lawsuit.

VERIFIED COMPLAINT                                                    Page 2

## IV.    <u>THE CLUB  IS A STATE ACTOR.</u>

9.      Local governments cannot act in violation of the provisions of the United States or Texas Constitutions, nor can they sidestep those safeguards by delegating their governmental functions to a third party. When a private party's conduct is fairly attributable to a municipality, it constitutes a "state actor" subject to constitutional requirements and prohibitions.

10.     The Club is a "state actor," its conduct is fairly attributable to the state, and it acts under color of state law.

11.     Hideaway, Texas is located north of Interstate 20 about thirteen miles northwest of Tyler in northwestern Smith County.

12.     Hideaway was initially developed by James W. Faire of Tyler, Texas. The property was deeded to the Club in 1969 and has been operated by the members since 1973 through a 12 member Board of Directors.

13.     The City of Hideaway (the "City") was incorporated as a Type B General Law City in 2001 to prevent being annexed by a nearby city.

14.     Encompassing almost 10 square miles, the City currently encompasses over 1,700 homes arranged around 235 acres of lakes.

15.     The City has a total population of over 3,500 people (roughly the same population as other Texas cities such as Llano, Port Aransas and Grand Saline).

16.     The City is completely entwined with and governed by the Club.

17.     The City and the Club both list their principal place of business as 101 Hideaway Lane Central, Hideaway, Texas 75771.

18.     The City has the same boundaries as the Club.

19.     The City has no employees. All management, security, and common property maintenance is handled by the Club.

20.     The City does not provide public education for its residents. City residents are served by the nearby Lindale Independent School District.

21.     The City does not provide a police department. Instead, security personnel employed by the Club patrol the streets and protect the safety of City residents. The provision of police protection is a governmental function under Texas law. *See* TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(1).

22.     The City does not provide emergency health services. Instead, the Club provides EMT services to City residents. The operation of emergency ambulance service is a governmental function under Texas law. *See* TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(18).

23.     The City has endowed the Club with powers and functions governmental in nature, such as maintaining parks and recreational facilities, supplying security personnel to patrol City streets, and providing emergency health services. *See* TEX. CIV. PRAC. & REM. CODE § 101.0215(a).

## V.     <u>FACTUAL BACKGROUND</u>

24.     In or about February of 2007, Plaintiff purchased a lakefront home in

VERIFIED COMPLAINT                                                          Page 4

Hideaway (the "Okon Property") and, as such, became a member of the Club.

25.     Almost a decade ago, another Hideaway family introduced Plaintiff and his family to wake surfing on the lake adjacent to the Okon Property (the "Middle Lake"), which is similar to wake boarding except that the "surfer" releases his or hold on the ski rope once he or she is pulled up and surfs along the wave behind the boat hands-free.

26.     Wake surfing is conducted at much lower speeds than other water sports such as waterskiing, wake boarding, and tubing. In addition, wake surfing is much more physically challenging, resulting in each "surfer" tiring much more quickly than he or she might while water skiing, wakeboarding, or especially tubing. Thus, wake-surfers generally make no more than 1 pass around the Middle Lake, compared with 2, 3, or more passes around the lake that are made by water-skiers, wake boarders, and tubers.

27.     In approximately 2020, Plaintiff purchased a Nautique wake-surfing boat (which is equipped with surfing technologies including ballasts and wake tabs which are used to shape and control the direction of the wake) so that he and his family could wake-surf using their own boat, rather than having to rely on their friends across the lake to take them on their boat (as they had been regularly doing for years). On information and belief, Plaintiff's Nautique boat was manufactured in Orlando, Florida and then sold through interstate commerce.

28.     As required by Club Rules and Regulations, Plaintiff registered that wake-surfing boat with the Club, the Club accepted the registration and issued Plaintiff an official

VERIFIED COMPLAINT                                                                                  Page 5

Hideaway decal to be displayed on the boat showing it was in compliance with Club Rules and Regulations.

29.     From 2020 through the present, Plaintiff and his children (as well as their friends) have regularly participated in wake-surfing on Hideaway's Middle Lake during the summer months.

30.     The following rules were already in effect in Hideaway prior to the enactment of the Contested Rules that are challenged herein:

a.  Texas State Law. Provides that boat operators are responsible for damages caused by destructive wakes. Boats that create large wakes, whether as a result of wakeboarding, slow speeds, the nature or design of the boat, or any other feature or act, must operate as far from the shoreline as possible while still maintaining a counterclockwise direction. The Security Department is responsible for advising the boat operator or member-owner of any violation, issuance of warnings, and enforcing the distance from the shore as described in these Rules. Fines, penalties, removal/or ban from the Lakes may be issued by the Security Department.

b.  Ski boats, pulling skiers, wakeboarders, *surfers,* inflatable, or similar device ("towees") must at all times have a minimum of two persons aboard. One is to be the boat operator and the other will be a responsible observer. Persons being towed ("towees") must wear a Personal Flotation Device (PFD).

c.  3. All boats, barges, and "towees" operating above idle speed must stay a minimum of 100 feet from the shoreline and any designated swimming area, as defined by marker buoys. Boats pulling "towees" should keep a minimum distance of 100 feet from other boats, canoes, or kayaks. It is not possible to safely maintain these distances in the channel areas of the Middle and third (3rd) lakes.  In these areas, all boats should stay as far away from other boats and the shoreline as possible.

(Emphasis added).

31.     While Plaintiff and his family have been wake-surfing on the Middle Lake

for almost a decade, neither Plaintiff nor their friends who introduced them to wake-surfing have ever been (a) assessed damages due to destructive waves, (b) advised of any violation related to wake-surfing, issued a warning related to wake-surfing, assessed a fine or penalty related to wake-surfing, or removed or banned from Hideaway lakes related to wake-surfing.

32.    In late 2023, two individuals, Pat Bonds (a prior Mayor of Hideaway and a personal friend of Jerry Mullins, the Club President) and Diane Sheppard (Mr. Bonds' neighbor) began complaining that their "sea walls" were deteriorating and, without any credible basis or evidence, claimed that it was due to wake-surfing. However, neither Mr. Bonds nor Ms. Sheppard had a functional "sea wall" at their property. In fact, Ms. Sheppard has never installed a sea wall at her property, instead claiming that "God made her sea wall" (which is simply the natural earth and rocks on her property).

33.    Despite his close personal friendship with Mr. Bonds, Mr. Mullins, the Club President, publicly advocated for a ban on wake-surfing in violation of the following prohibition contained in the Club's Bylaws: "A director shall abstain from advocacy of or voting on any matter which involves an actual or potential conflict of interest between the director's personal relationships or those of the director's immediate family and the affairs of the Club."

34.    There is no credible evidence, and the Club has certainly not presented any, supporting the contention that wake-surfing has any more effect on erosion of the sea walls on the Middle Lake in Hideaway than other boating activities, such as water-skiing,

VERIFIED COMPLAINT                                                                    Page 7

wakeboarding, and tubing. In fact, during wake-surfing, Plaintiff can direct the wave to the side of the boat furthest from the shore (in addition to the boat operating at a slower speed and making fewer passes around the lake than during waterskiing, tubing, and wake boarding).

35.     Plaintiff presented information and evidence to the Club showing that wake-surfing did not have a greater impact on sea walls on the Middle Lake than other water sports and presented evidence showing that – despite their complaints - neither Mr. Bonds nor Ms. Sheppard had a functional sea wall.

36.     The Club wholly refused to investigate whether wake-surfing, in fact, had a greater impact on sea walls than other water sports.

37.     Initially, the Club proposed imposing certain restrictions on wake-surfing, such as requiring the boats to direct their wakes away from the shoreline and remain at least 200 feet from the shoreline.

38.     Then, in late 2023 and/or early 2024, the Club scrapped potential rule language merely imposing restrictions on wake-surfing and instead enacted the following **new** rules (the "Contested Rules"):

   a.  All boats 22' and larger, with the exception of pontoons, with V-Shaped Hull or similar configurations, and boats that produce artificial wake enhancement with the use of any mechanical/technology features such as bladders, ballasts, fins, trim, tabs, surf tabs, or any means of weight distribution or otherwise causing a boat to operate in a bow-high manner shall be strictly prohibited on all Hideaway Lakes.  All existing registered boats as of the final date of the Board of Directors approval, are grandfathered until the boat is sold, transferred or the member moves out of Hide-A-Way Lake Club.

b.   Wake surfing and the artificial enhancement of waves by any means is prohibited on all Hideaway Lakes.

39.   The Club failed to follow the Bylaw's required procedures in enacting the Contested Rules.

40.   The Contested Rules are nonsensical and cannot possibly be enforced as written.   For example, all V-Shaped boats operate in a "bow-high manner" at certain speeds. For instance, if pulling young kids on a tube at 12 miles per hour, the boat will not plane and will operate with the front of the boat raised up until it goes fast enough to plane. Also, when teaching children to ski, the boat is driven at slow speeds which causes the front of the hull to be elevated in a "bow-high manner" the entire time the child is being pulled behind the boat.

41.   The Club did not consider, review, or rely on any study, report, or analysis that supported the purported concern that wake-surfing caused more damage to sea walls in the Middle Lake that other allowed water sports.

42.   When Plaintiff bought his property in Hideaway, none of these restrictions existed, and Plaintiff and his family were allowed to engage in boating activities with no restrictions on the type of water sport. In addition to arbitrarily restricting Plaintiff's activities, the Contested Rules will likely deter certain buyers and diminish property values in Hideaway.

## VI.   CLAIMS FOR RELIEF

### First Claim for Relief
### Declaratory Judgment, 28 U.S.C. § 2201

43.    Plaintiff reasserts each and every allegation contained in the preceding paragraphs as if set forth herein fully.

44.    Pursuant to  28 U.S.C. § 2201(a), the Court "may declare the rights and other legal relations of any interested party seeking such declaration."

45.    This case involves an actual controversy between Plaintiff and the Club regarding the constitutionality of the Contested Rules.

46.    The Contested Rules' discriminatory application to Plaintiff and wake-surfing has injured Plaintiff and his family and has deprived Plaintiff of his right to due process and equal protection of the laws.

47.    Plaintiff is entitled to a declaration that the Club cannot enforce the Contested Rules against Plaintiff. Plaintiff is further entitled to a declaration that the Contested Rules are invalid and unenforceable under the Due Process and the Equal Protection Clauses of the United States Constitution and Article 1, Sections 19 and 29 of the Texas Constitution.

48.    Plaintiff's rights, status, or other legal relations are affected by the actions taken by the Club in adopting the Contested Rules. The Club's actions as set forth in the allegations above in this Complaint are illegal.

49.     An actual controversy exists between Plaintiff and the Club and as to Plaintiff's legal rights in respect to the Contested Rules. This controversy involves an actual, rather than a potential, dispute.

50.    The actions taken by the Club in adopting the Contested Rules should be reviewed under the Court's power to review a controversy and declare rights, status, or legal relations pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

**Second Claim for Relief**
**Deprivation of Equal Protection Rights in Violation of 42 U.S.C. § 1983**

51.    Plaintiff re-alleges and incorporates by reference herein the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

52.    Under  42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

53.    The Equal Protection Clause of the Fifth and Fourteen Amendments to the United States Constitution, and Article 1, Section 19 of the Texas Constitution ensure protection from an arbitrary deprivation of an individual's liberty or property interest without due process of law.

54.    Plaintiff has a constitutionally protected liberty and/or property interest in the Okon Property, his wake-surfing boat, his wake-surfing board, and his right to conduct recreational activities in the City of Hideaway free from illegal discrimination or restriction. Indeed, the right to use one's interest in land and property to any legitimate use is properly within the protection of the United States and Texas Constitutions.

55.     The Club, under color of state law, has deprived and continues to deprive Plaintiff of his equal protection rights, as secured by the Fifth and Fourteenth Amendments to the United States Constitution and  42 U.S.C. § 1983.

56.     The Club has no immunity from this claim under the Eleventh Amendment to the United States Constitution.

57.     The Equal Protection Clause of the Fourteenth Amendment prohibits any state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Constitution Amendment XIV, § 1.

58.     The Equal Protection Clause prohibits governmental decision-makers from treating differently persons who are in all relevant respects alike.

59.     The Club's use of classifications in the Contested Rules differentiates among classes unreasonably to the detriment of Plaintiff's liberty and property interests.

60.     The Contested Rules are arbitrary, oppressive, and capricious and have no reasonable relationship to the alleged harms sought to be prevented.

61.     The Club has not identified how it can rationally justify preventing Plaintiff from operating the boat of his choice and/or engaging in wake-surfing.

62.     Thus, the Contested Rules appear to rest on an irrational prejudice against people who engage in wake-surfing, rather than other similar water sports.

63.     There is no legitimate governmental objective to be achieved by the Contested Rules, and the Club's enforcement of the Contested Rules is not reasonably likely to achieve any legitimate governmental objective.

64.     There is no legitimate governmental objective furthered by banning boats that "produce artificial wake enhancement with the use of any mechanical/technology features such as bladders, ballasts, fins, trim, tabs, surf tabs, or any means of weight distribution are capable of producing a wave for wake-surfing." All motorized boats produce artificial wake enhancement with the use of mechanical or technology features.

65.      There is no legitimate governmental objective furthered by prohibiting wake-surfing.

66.     Even if a legitimate governmental objective for the Contested Rules could be offered, there is no rational basis that Contested Rules actually further such an objective.

67.     As a result of these deprivations in violation of the United States and Texas Constitutions, Plaintiff is entitled to relief under  42 U.S.C. § 1983. Specifically, Plaintiff is entitled to injunctive relief prohibiting the Club from enforcing the Contested Rules against him and for damages suffered by him as a result of the Club's constitutional violations.

68.     Without relief from this Court, the Club, acting under color of state law, will continue to deprive Plaintiff of his rights guaranteed by the United States and Texas Constitutions.

69.     An award of reasonable attorneys' fees as part of Plaintiff's costs is justified under 42 U.S.C. § 1988(b). Plaintiff's claim for attorneys' fees is cumulative, and therefore increases the longer it takes to resolve this dispute.

70.     Plaintiff prays for the Order of the Court (a) finding that the Contested Rules violate Plaintiff's equal protection rights, (b) declaring the Contested Rules void and unenforceable, (c) declaring that Plaintiff may engage in wake-surfing in the Middle Lake in Hideaway, (d) awarding Plaintiff damages caused by the Club's constitutional violations, (e) awarding Plaintiff his attorneys' fees, and (f) for such other and further relief as this Court may deem just and proper under the premises.

### Third Claim for Relief
### Deprivation of Due Process Rights in Violation of 42 U.S.C. § 1983
### as the Contested Rules are Unconstitutionally Vague

71.     Plaintiff re-alleges and incorporates by reference herein the allegations in foregoing paragraphs of this Complaint as if fully set forth herein.

72.     Under  42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

73.     The Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 19 of the Texas Constitution ensure protection from an arbitrary deprivation of an individual's liberty or property interest without due process of law.

74.     The Club, under color of state law, has deprived and continues to deprive Plaintiff of his due process rights, as secured by the Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Article 1, Section 19 of the Texas Constitution.

75.     A law that either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates the Fourteenth Amendment to the United States Constitution and is void for vagueness.

76.     The test to determine whether the Contested Rules are unconstitutionally void for vagueness is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. At its heart, the test is a common-sense determination of fundamental fairness.

77.     The Contested Rules are unconstitutionally vague as they require one to guess at their meaning and allow for arbitrary enforcement.

78.     As a result of these deprivations in violation of the United States and Texas Constitutions, Plaintiff is entitled to relief under  42 U.S.C. § 1983. Specifically, Plaintiff is entitled to injunctive relief prohibiting the Club from enforcing the Contested Rules against Plaintiff and for damages suffered by Plaintiff as a result of the Club's constitutional violations.

79.     Without relief from this Court, the Club, exercising governmental functions and acting under color of state law, will continue to deprive Plaintiff of his rights

VERIFIED COMPLAINT                                                                                      Page 15

guaranteed by the United States and Texas Constitutions.

80.     In addition to actual damages, an award of reasonable attorneys' fees as part of Plaintiff's costs is justified under  42 U.S.C. § 1988(b). Plaintiff's claim for attorneys' fees is cumulative, and therefore increases the longer it takes to resolve this dispute.

81.     Plaintiff prays for the Order of the Court (a) finding that the Contested Rules are unconstitutionally vague, (b) declaring the Contested Rules void and unenforceable, (c) declaring that Plaintiff may engage in wake-surfing on the Middle Lake in Hideaway, (d) awarding Plaintiff damages caused by the Club's constitutional violations, (e) awarding Plaintiff his attorneys' fees, and (f) for such other and further relief as this Court may deem just and proper under the premises.

## Fourth Claim for Relief
### Deprivation of Substantive Due Process Rights in Violation of 42 U.S.C. § 1983

82.     Plaintiff re-alleges and incorporates by reference herein the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

83.     Under  42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

84.     The Due Process Clause of the Fifth and Fourteen Amendments to the United States Constitution, and Article 1, Sections 19 and 29 of the Texas Constitution ensure

VERIFIED COMPLAINT                                                    Page 16

protection from an arbitrary deprivation of an individual's liberty or property interest without due process of law.

85.     Plaintiff has constitutionally protected liberty and/or property interests in the Okon Property, his boat, his wake-surfing board, and his right to engage in recreational activities in the City of Hideaway free from illegal discrimination and/or restriction. Indeed, the right to use one's interest in property and land to any legitimate use is properly within the protection of the United States and Texas Constitutions.

86.     The Club, under color of state law, has deprived and continues to deprive Plaintiff of his substantive due process rights, as secured by the Fifth and Fourteenth Amendments to the United States Constitution,  42 U.S.C. § 1983, and Article 1, Sections 19 and 29 of the Texas Constitution.

87.     Substantive due process is the constitutional guaranty that no person shall be deprived of his life, liberty, or property for arbitrary reasons.

88.     The Club does not possess plenary power to pass legislation or rules that are arbitrary, oppressive, and capricious, and which bear no substantial relationship to the public safety and welfare.

89.     The guarantee of due process demands that the means selected shall have a real and substantial relation to the objective sought to be obtained.

90.     According to the Club, the purpose of the Contested Rules is to prevent damage and erosion to sea walls on the Middle Lake in Hideaway.

91.     The Contested Rules are arbitrary, oppressive, and capricious and have no reasonable relationship to the alleged harms sough to be prevented.

92.     It is not a legitimate state purpose to restrict the types of boats that can be purchased in interstate commerce, especially when the features the Club seeks to ban can be disabled and/or not utilized.

93.     Plaintiff is unaware of any report, study, or analysis that would support a conclusion that wake-surfing results in more harm to sea walls on the Middle Lake in Hideaway than other allowed water sports.

94.     In passing the Contested Rules, it does not appear that the Club relied on any evidence that could support its stated intent in passing the Contested Rules.

95.     There is no evidence that wake-surfing causes more harm to sea walls on the Middle Lake in Hideaway than other allowed water sports.

96.     The Contested Rules do not have a real and substantial relation to the Club's objective.

97.     It is arbitrary and capricious for the Club to conclude that wake-surfing causes more damage to sea walls on the Middle Lake than other allowed water sports.

98.     It is arbitrary and capricious for the Club to conclude that the types of boats specified in the Contested Rules pose any threat or negative impact, especially when the features at issue can be disabled and/or not utilized.

99.     Likewise, there is no rational basis to allow water-skiing, tubing, and wake-boarding on the Middle Lake but not allow wake-surfing on the Middle Lake.

100.    Further, allowing Plaintiff to engage in wake-surfing on the Middle Lake in Hideaway would not change the long-standing status quo. Plaintiff, his family, and his friends have been engaging in that activity on the Middle Lake for over a decade.

101.    There is no legitimate governmental objective sought to be achieved by the Contested Rules as it applies to Plaintiff.

102.    As a result of these deprivations in violation of the United States and Texas Constitutions, Plaintiff is entitled to relief under  42 U.S.C. § 1983. Specifically, Plaintiff is entitled to injunctive relief prohibiting the Club from enforcing the Contested Rules against Plaintiff and for damages suffered by Plaintiff as a result of the Club's constitutional violations.

103.    Without relief from this Court, the Club, acting under color of state law, will continue to deprive Plaintiff of his rights guaranteed by the United States and Texas Constitutions.

104.    An award of reasonable attorneys' fees as part of Plaintiff's costs is justified under  42 U.S.C. § 1988(b). Plaintiff's claim for attorneys' fees is cumulative, and therefore increases the longer it takes to resolve this dispute.

105.    Plaintiff prays for the Order of the Court (a) finding that the Contested Rules are unconstitutionally vague, (b) declaring the Contested Rules void and unenforceable, (c) declaring that Plaintiff may engage in wake-surfing on the Middle Lake in Hideaway, (d) awarding Plaintiff damages caused by the Club's constitutional violations, (e) awarding

Plaintiff his attorneys' fees, and (f) for such other and further relief as this Court may deem just and proper under the premises.

### Fifth Claim for Relief
### Violation of the Commerce Clause and Dormant Commerce Clause
### U.S. Const. Art. I, Sec. 8, cl. 3, and 42 U.S.C. § 1983

106.   Plaintiff reasserts each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein fully.

107.   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

108.   The Commerce Clause of the U.S. Constitution grants Congress the power "[t]o regulate commerce with foreign Nations, among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3.

109.   In its dormant state, often called the Dormant Commerce Clause, the Commerce Clause precludes States from enacting legislation that discriminates against or impermissibly burdens interstate commerce. State laws that facially discriminate against interstate commerce are invalid *per se* under the Commerce Clause. This is true also of State laws that are facially neutral if they impermissibly burden interstate commerce in practice. *West Lynn Creamery v. Healy*, 512 U.S. 186, 194–195 (1994).

VERIFIED COMPLAINT                                                                 Page 20

110.   Although the Dormant Commerce Clause is usually invoked to challenge protectionist laws that favor in-state businesses over out-of-state businesses, the Clause has a broader function: to guarantee for all citizens the right to access and participate in interstate commerce. Just as no State can prevent out-of-staters from engaging in commerce with its residents, no State may prevent its residents from participating in commerce with those located in another State.

111.   The Contested Rules impermissibly restrict Plaintiff from exercising the right to engage in interstate commerce.

112.   The Commerce Clause of the United States Constitution reserves the power to regulate interstate and foreign commerce to Congress.

113.   Because these powers are reserved to Congress, individual states may not unduly burden interstate commerce.

114.   The Contested Rules impose a burden on interstate commerce and on Plaintiff that is clearly excessive in relation to the putative benefits.

115.   Accordingly, the Contested Rules are an unconstitutional regulation of and interference with interstate commerce and/or an undue burden on in-state commerce in violation of the Dormant Commerce Clause of the United States Constitution.

116.   The burdens the Contested Rules impose on interstate and foreign commerce are clearly excessive in relation to their purported public purpose, and the Club's local interests in reducing erosion to sea walls can be promoted at least as well by other means with less impact on interstate or foreign commerce.

117.   The Contested Rules are not reasonably related to their purported intended purpose of reducing erosion to sea walls. Moreover, to the extent it could be found that wake-surfing does impact erosion of sea walls on the Middle Lake more than other permitted water sports (which Plaintiff disputes), the purported purpose of the Contested Rules could be achieved by placing restrictions on wake-surfing (such as the restrictions originally contemplated by the Club concerning distance from the shore and direction of the wake) rather than the wholesale banning of wake surfing boards, motorized surf boards, and boats equipped with "mechanical/technology features such as bladders, ballasts, fins, trim, tabs, surf tabs, or any means of weight distribution or otherwise causing a boat to operate in a bow-high manner."

118.   As a result of these deprivations in violation of the United States Constitution, Plaintiff is entitled to relief under 42 U.S.C. § 1983. Specifically, Plaintiff is entitled to injunctive relief prohibiting the Club from enforcing the Contested Rules against Plaintiff and for damages suffered by Plaintiff as a result of the Club's constitutional violations.

119.   Without relief from this Court, the Club, acting under color of state law, will continue to deprive Plaintiff of his rights guaranteed by the United States and Texas Constitutions.

120.   An award of reasonable attorneys' fees as part of Plaintiff's costs is justified under 42 U.S.C. § 1988(b). Plaintiff's claim for attorneys' fees is cumulative, and therefore increases the longer it takes to resolve this dispute.

121.   Plaintiff prays for the Order of the Court (a) finding that the Contested Rules are unconstitutionally vague, (b) declaring the Contested Rules void and unenforceable, (c) declaring that Plaintiff may engage in wake-surfing on the Middle Lake in Hideaway, (d) awarding Plaintiff damages caused by the Club's constitutional violations, (e) awarding Plaintiff his attorneys' fees, and (f) for such other and further relief as this Court may deem just and proper under the premises.

### Sixth Claim for Relief
### Injunctive Relief

122.   Plaintiff reasserts each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein fully.

123.   The Contested Rules (a) violate the Commerce Clause of the United States Constitution, (b) violate Article 1, Sections 19 and 29 of the Texas Constitution, and (c) deprive and threaten to deprive Plaintiff of his rights guaranteed by the Fourteenth Amendment to the United States Constitution to (i) be treated equally, (ii) to be free from irrational, arbitrary, and capricious laws, and (iii) to be afforded due process of law, all of which threaten to cause irreparable harm to Plaintiff for which there is no adequate remedy at law.

124.   By reason of the Club's conduct and threatened conduct and the irreparable harm Plaintiff will suffer, Plaintiff is entitled to a temporary restraining order, preliminary injunction, and, after final hearing, a permanent injunction demanded hereunder.

125.   Injunctive relief is authorized by the United States Code and Rule 65 of the Federal Rules of Civil Procedure.

VERIFIED COMPLAINT

## VII.   <u>ATTORNEY'S FEES</u>

126.    It has been necessary for Plaintiff to secure the services of counsel to pursue this matter, both in an attempt to settle the case without litigation, and to file and litigate this lawsuit. Should Plaintiff prevail in this matter, Plaintiff respectfully requests that the Court award reasonable and necessary attorney's fees incurred in enforcing Plaintiff's civil rights.

## VIII.  <u>JURY DEMAND</u>

127.    Plaintiff demands trial by jury on all issues of law or fact so triable.

## IX.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff seeks judgment against the Club declaring and adjudicating as follows:

a.   For an *ex parte* preliminary order enjoining enforcement of the Contested Rules against Plaintiff;

b.   Additionally, Plaintiff requests a hearing after proper service on Defendant, and upon such hearing, prays that a temporary injunction issue, enjoining enforcement of the Contested Rules pending further order of this Court, in order to maintain the *status quo* until this case has been fully litigated;

c.   Additionally, Plaintiff prays for a declaratory judgment declaring the Contested Rules unconstitutional and unenforceable;

d.   Additionally, Plaintiff prays for a permanent injunction enjoining enforcement of the Contested Rules.

e.   Additionally, Plaintiff prays for a declaratory judgment declaring the Club to be a "state actor," operating under the color of state law, and a pervasively intertwined state actor/agent of the City pursuant to  42 U.S.C. § 1983;

f.   Additionally, Plaintiff prays for an award of actual, compensatory, special, and statutory damages;

g.   Additionally, Plaintiff prays for an award of attorney's fees and costs pursuant to  42 U.S.C. § 1988; and

h.   Finally, Plaintiff prays for such other and further relief as Plaintiff may show himself to be justly entitled, at law or in equity.

Respectfully submitted,


s/*Melanie Kemp Okon*
Melanie Kemp Okon
Texas Bar No. 24012951
GUM, PUCKETT, MACKECHNIE
 COFFIN & MATULA, LLP
105 North Hudson, Suite 900
Oklahoma City, Oklahoma 73102
Telephone:  405.488.1212
Facsimile:  405.488.1216
 mkemp@gpmlegal.net

**ATTORNEYS FOR PLAINTIFF**

## UNSWORN DECLARATION OF LOUIS EUGENE OKON

I, Louis Eugene Okon, based on my personal knowledge, state the following:

1.     My name is Louis Eugene Okon. I am over the age of 18, of sound mind, have never been convicted of a felony or other crime involving moral turpitude, and I am fully competent to testify to the matters contained in this Declaration.

2.     I have read the foregoing Complaint, and that the factual information contained therein is true and correct to the best of my knowledge and belief.

I declare under penalty of perjury  that the statements above are true and correct.

This unsworn declaration is given pursuant to 28 U.S.C. § 1746.

Executed in Dallas County, Texas on June 17, 2024.

_____

Louis Eugene Okon