**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **LOUIS OKON,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 6:24-cv-00224** |
| | § | |
| **HIDE-A-WAY LAKE CLUB, INC.,** | § | |
| | § | |
| *Defendant.* | § | |

<u>**AFFIDAVIT OF JOAN HAYES**</u>

Before me, the undersigned authority, personally appeared Joan Hayes, who being by me duly sworn, deposed as follows:

1.     "My name is Joan Hayes, and I am over the age of eighteen year. I have personal knowledge of the statements set forth in this Affidavit, and I am of sound mind and capable of making the statements in this Affidavit.

3.     I have been employed with Defendant, Hide-A-Way Lake Club, Inc. ("The Club") in various capacities since 1993.

4.     From March 13, 1993, to January 1, 2000, I worked in the accounting department of The Club handling issues relating to accounts payable, accounts receivable, and payroll.   From January 1, 2000, to June 15, 2005, I served as an administrative assistant for The Club.

6.     From June 15, 2005, to the present, I have served as The Club's Assistant General Manager. In my capacity as the Assistant General Manager, I am The Club's custodian of the records. I am also responsible in assisting The Club as to its administrative affairs, to include processing and sending notices and

**EXHIBIT
A**

1

correspondence to owners regarding: The Club's Board meetings and agenda, amendments to Bylaws and Rules, general status letters, and notices of referendum votes and their results. I am personally responsible for ensuring the notices and correspondence are sent to property owners. Since 2007 I have personally filed The Club's corporate records in Smith County, Texas property records. In my capacity as Assistant General Manager I am aware of The Club's maintenance of common areas, collections of assessments, budgeting, services provided by the Club including security and collection of owners' subscriptions fees for ambulatory services, deliberations of Rules changes, and The Club's relationship to the City of Hideaway.

      8.     Attached hereto are copies of the following documents and records of The Club:

      (a)     Exhibit 1: The most recent version of the Deed Restrictions, originally filed in March 1995 (Declaration of Covenants, Conditions, and Restrictions), for properties located within the "old subdivision" of The Club, recorded on January 25, 2007, in the Smith County, Texas, public records, Instrument Number 2007-R00004200. I am aware that Louis Okon's property located at 1383 Hideaway Lane West, Hideaway, Texas is in the old subdivision,

      (b)     Exhibit 2: The most recent version of the Club's Bylaws, dated April 18, 2022, recorded on May 13, 2022, in the Smith County, Texas, public records, Document Number 202201018788.

(c)      Exhibit 3: The most recent version of the Club's Rules and Regulations for The Club (the "Rules"), recorded on May 9, 2024, in the Smith County public records, Document Number 202401013250.

(d)      Exhibit 4: Affidavit Authenticating Articles of Merger of Domestic Corporations, Hide-A-Way Lake Home Owners, Inc. and Hide-A-Way Lake Club, Inc. dated January 7, 2000 and filed in the Smith County records on January 12, 2000.

(e)      Exhibit 5: Articles of Merger of Domestic Corporations, Hide-A-Way Lake Home Owners, Inc. and Hide-A-Way Lake Club, Inc filed with the Texas Secretary of State on December 29, 1999.

(f)      Exhibit 6: Certificate of Merger issued by the Secretary of the State of Texas, effective January 1, 2000, and filed on January 12, 2000, with the Texas Secretary of State.

(g)      Exhibit 7: Certificate of Account Status for The Club issued by the Secretary of the State of Texas dated December 27, 1999.

(h)      Exhibit 8: The Club Membership Agreement signed by Plaintiff, Louis Okon ("Plaintiff") on November 21, 2006.

(i)      Exhibit 9: The October 2023 Voting Ballot form sent by The Club to its members, including, Mr. Okon, on January 5, 2024, requesting property owners to vote on proposed Rules change prohibiting wake surfing on The Club's lakes.

(j)    Exhibit 10: Notice letter form sent to members on February 24, 2024, conveying the Results of the Board Referendum Ballot October 2023 to Amend the Rules.

9.    Exhibits 1 through 10 (collectively referred to as the "Records") are Records from The Club. The Club keeps and maintains these Records in the regular course of its business. It is the Club's regular practice to maintain these records, The Records are true, accurate, and correct copies of the original documents, except where highlighted or redacted.

10.    In addition to having been employed by The Club since 1993, I have owned a home within The Club since 1978 and am aware that my property is subject to The Club's Declarations and Rules. Based on my employment history at the Club and my personal ownership of property within the Club, I have personal knowledge regarding the following facts:

(a)    The City of Hideaway, Texas does not own any land, property, or streets within the boundaries of The Club. The City of Hideaway is operated wholly separate and independent from the operations of The Club. The City of Hideaway is not involved with the operations of The Club. The management of the City of Hideaway is conducted through a separate and independent Mayor and City Council.

(b)    The Club operates as a homeowners' association and acts through its elected Board members. Management of The Club and the City of Hideaway is separate and independent of the other.

(b)    The Club owns all three lakes within The Club.

4

(c)     All property within the boundaries of The Club is either owned by private residents (who are members of The Club) or by The Club, such as common elements which are maintained and serviced by The Club.

(d)     Security services for members of The Club were not delegated by The City of Hideaway to The Club. For example, using membership dues and assessments collected from members of The Club, The Club has engaged a private security company to patrol the streets within the boundaries of The Club. The City is not involved with and does not financially contribute to The Club's contract with this private security company.

(e)     Emergency medical services for members of The Club were not delegated by the City of Hideaway to The Club. For example, for an additional fee, members of The Club can opt, through a subscription fee, to have access to emergency ambulatory services from private EMT service companies at a reduced rate. The City is not involved with the member's selection of the service or the provision of the service to the member of The Club. The City of Hideaway is not involved in providing the EMT services. As an accommodation, the member may pay the subscription fee to The Club, which is then forwarded to the private EMT service provider.

(f)     The Club owns the common elements of The Club, and therefore The Club maintains the common elements, such as parks, lakes, and recreational facilities. The City of Hideaway does not maintain any of the common elements within The Club. The City of Hideaway is not involved in the maintenance of the lakes, rules governing use of the lake, or restrictions on lake recreation.

(g)    The City of Hideaway was not involved in the changes to Article V (LAKES), paragraphs 6 and 7 of the Rules- which are the subject of this litigation. Paragraph 6 was amended by the Board and Paragraph 7 (related to wave surfing) was amended based on a referendum to the members which passed by a vote of 1603 to 683.

(h)    I am not aware the City of Hideaway has ever endowed the Club with any governmental power or function include maintaining parks and recreation facilities (since the City of Hideaway does not own such properties), supplying security personnel to patrol The Club's streets, or providing emergency health services.  Further, Affiant sayeth not."

_____

Joan Hayes


SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, on this _15_ day of July 2024, to certify which witness my hand and seal of office.

My Commission Expires:                    _____
10-21-2024                                Notary Public in and For the State of Texas



CHARITY H HARMON
Notary Public
STATE OF TEXAS
ID#12806492-1
My Comm. Exp. Oct. 21, 2024

# EXHIBIT 1



**Smith County**
**Judy Carnes**
**County Clerk**
**Tyler Tx 75702**

Instrument Number: **2007-R00004200**

As

Recorded On: **January 25, 2007**

Recordings - Land

Parties: **HIDE-A-WAY LAKE CLUB INC**    **Billable Pages: 8**

To    **PUBLIC**    **Number of Pages: 9**

Comment: **DEED RESTRICTIONS**

( Parties listed above are for Clerks reference only )

** Examined and Charged as Follows: **

Recordings - Land    44.00

Total Recording:    **44.00**

---

\*\*\*\*\*\*\*\*\*\*\*\* **DO NOT REMOVE THIS PAGE IS PART OF THE INSTRUMENT** \*\*\*\*\*\*\*\*\*\*\*\*

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**    **Record and Return To:**

Document Number: 2007-R00004200

Receipt Number: 417113    HIDE-A-WAY LAKE CLUB INC

Recorded Date/Time: January 25, 2007 10:05:13A    101 HIDE-A-WAY LANE CENTRAL

HIDEAWAY TX 75771

User / Station: C Aparicio - Cash Station 2

---



I hereby certify that this instrument was filed and duly recorded
in the Official Records of Smith County, Texas

*Judy Carnes*

County Clerk
Smith County, Texas

Ex. A (Affidavit) - Page 8

HIDE-A-WAY LAKE CLUB, INC.

# DEED RESTRICTIONS [b]

MARCH 1995

### DECLARATION OF COVENANTS, CONDITIONS, AND RESTRICTIONS, OF

HIDE-A-WAY LAKE SUBDIVISION AND LAKE HIDE-A-WAY SUBDIVISION   containing together Units l, 3, 5 to 25 inclusive; and 28 to 42 inclusive; and lots numbered 1 to 27 inclusive, 55 to 98 inclusive, 109 to 330 inclusive, 332 to 340 inclusive, 343 to 353 inclusive, 363 to 673 inclusive, 678 to 1252 inclusive, 1301 to 1480 inclusive, 1485 to 1544 inclusive, 1548 to 1549 inclusive, and 1553 to 2024 inclusive; plus that certain lot, part of the I.T.T. Simms survey, Abstract  No. 1181, on which is built condominium units described at Unit 50, all located in Smith County, Texas.

The current Declaration of Covenants, Conditions, and Restrictions  covering the above-described properties state that said declarations may be changed by consent of a majority of lot owners twenty-five years from the date said declarations were first impressed upon the properties.  The twenty-five year period will end for each of the above described properties in 1992, 1993, 1994, or 1999.

THEREFORE, to carry out a general plan of development and maintenance of the above-described properties, a majority of the lot owners desire to adopt, establish, and impose the following covenants, conditions, and restrictions on the above-described properties to become effective as follows (Smith County filing information is also shown):

     HIDE-A-WAY LAKE UNIT NO. 25 SUBDIVISION - 6/25/93;
     LAKE HIDE-A-WAY UNIT NO. 28 SUBDIVISION - 7/23/93;
     LAKE HIDE-A-WAY UNIT NO. 29 SUBDIVISION - 9/3/93;
     LAKE HIDE-A-WAY UNIT NO. 30 SUBDIVISION - 9/3/93;
     LAKE HIDE-A-WAY UNIT NO. 31 SUBDIVISION - 9/3/93;
     LAKE HIDE-A-WAY UNIT NO. 32 SUBDIVISION
       LOTS 1582 through 1607  - 9/3/93;
     LAKE HIDE-A-WAY UNIT NO. 33 SUBDIVISION - 9/3/93;
     LAKE HIDE-A-WAY UNIT NO. 34 SUBDIVISION - 9/3/93;
     LAKE HIDE-A-WAY UNIT NO. 32 SUBDIVISION
       LOTS 1564 through 1581  - 11/18/93;
     LAKE HIDE-A-WAY UNIT NO. 35 SUBDIVISION - 10/8/93;
     LAKE HIDE-A-WAY UNIT NO. 36 SUBDIVISION - 11/25/93;
     LAKE HIDE-A-WAY UNIT NO. 37 SUBDIVISION - 11/25/93;
     LAKE HIDE-A-WAY UNIT NO. 38 SUBDIVISION - 11/25/93;
     LAKE HIDE-A-WAY UNIT NO. 39 SUBDIVISION - 11/25/93;
     LAKE HIDE-A-WAY UNIT NO. 40 SUBDIVISION - 11/25/93;
     HIDE-A-WAY LAKE UNIT NO. 41 SUBDIVISION - 8/6/94;
     LAKE HIDE-A-WAY UNIT NO. 42 SUBDIVISION - 8/6/94;
     HIDE-A-WAY LAKE UNIT NO. 44 SUBDIVISION - 8/4/92;
       #23097,v3260,p220
     LAKE HIDE-A-WAY UNIT NO. 50 SUBDIVISION - 3/29/99;

Reference throughout this instrument to Hide-A-Way Lake Club shall mean both Hide-A-Way Club, Inc., and Hide-A-Way Lake Home Owners, Inc., unless otherwise stated or specifically set forth.

Reference throughout this instrument to the CLUB, CLUB members, CLUB property, etc., shall mean Members, property, etc., of Hide-A-Way Lake Club, Inc.

Reference throughout this instrument to MEMBER or CLUB MEMBER shall mean members of Hide-A-Way Lake Club, Inc., which term is defined in the BYLAWS of Hide-A-Way Lake Club, Inc.

## I. RESERVATIONS, EASEMENTS

A. Easements for construction, operation, and maintenance of public utilities shall be those reserved on the plats recorded for each unit.

B. Easements reserved on the said recorded plats for the construction, operation, and maintenance of public utilities are also reserved for use as hiking and riding trails by members of Hide-A-Way Lake Club.

## II. SPECIFIC LAND USE

A. All lots shall be used for residential purposes.  No business usage is allowed if such use entails multiple business-connected vehicle parking.  Also, no merchandise, commercial stock, or materials may be visible stored on any lot.

   No lot may be used for storing or parking heavy construction equipment, trucks, or trailers; and other business-related equipment is prohibited EXCEPT during construction periods.

   Construction equipment parking must conform to the **HIDE-A-WAY LAKE CLUB BUILDING CODE** in effect at the time of construction.

B. No soil or trees shall be removed for any commercial use.  Cutting of trees shall be limited to the extent necessary for clearing the foundation site for construction, any additional cutting of trees at **any time** shall be done only upon written approval of Hide-A-Way Lake Club.

C. No building shall be erected on any lot or lots other than one single-family dwelling with garage, if any, except for those outbuildings described in the **HIDE-A-WAY LAKE CLUB BUILDING CODE**.  the floor area of any dwelling or cottage--exclusive of garage, porches, and basements-- shall not be less than the **HIDE-A-WAY LAKE CLUB BUILDING CODE** in effect at the time the Building Permit is issued.

D. No structure of a temporary character, trailer, basement, tent, shack, garage, or other outbuilding shall be used on any lot at any time as a residence, either temporarily or permanently.

E. All construction must be permitted as provided for in the **HIDE-A-WAY LAKE CLUB BUILDING CODE** in effect at the time of construction. All construction must be completed within the time specified in said building code.  If construction is not completed within that time, a new permit or an extension must be obtained as provided in the **HIDE-A-WAY LAKE BUILDING CODE.**

F. No outhouses shall be permitted on any part of the property; all lavatories, toilets, and bath facilities shall be installed indoors.

## III. BUILDING RESTRICTIONS

A. No building shall be erected on any lot until the plans, specifications, and plot plan therefor have been approved in writing by Hide-A-Way Lake Club, its successors, and assigns.

B. Compliance with the **HIDE-A-WAY LAKE CLUB BUILDING CODE,** hereinafter referred to as Building Code, is required.  The Building Code may be modified or changed from time to time by

2

action of the Hide-A-Way Lake Club, Inc., Board of Directors. Therefore, when the activities described in the Building Code are carried out, the Building Code currently in effect at that time shall apply unless superseded by directives issued by Federal, State, or County regulatory authorities. the Building Code covers but is not limited to the activities described below in Paragraph III.C. (1 through 9).

C. (1) **Construction Requiring Permits.** All construction and modifications to dwellings, outbuildings, and miscellaneous as defined in the Building Code require construction permits.

(2) **Permits** for all construction or modifications of existing structures, including waste treatment systems, must be obtained in accordance with the Building Code.

(3) **Set Back Requirements.** Building setbacks from the roadside lot line will be twenty-five (25) feet for all lots with the exception of waterfront lots where the building setback will be fifteen (15) feet from the roadside lot line. Steps, eaves (up to four feet in width), and open porches and decks which are uncovered and not enclosed by other than handrails (three feet or less in height) shall not be considered as part of a building. All other setback requirements and interpretations will be as described in the Building Code current at time of construction.

(4) **Storage Buildings.** Storage buildings will be regulated as described in the Building Code.

(5) **Construction, Modification, and Use of Streets/Parkways and Lake Shore Properties.** New roadways and existing roadways will be constructed, maintained, and used as described in the Building Code.

Lake shore property--including seawalls, bulkheads, retaining walls, piers, boathouses, and boat slips--shall be constructed, modified, and maintained as described in the Building Code.

(6) **Use of Parkways.** A parkway is the paved and/or unpaved area of the platted utility easement. It extends from the surfaced area of the street to the outer utility easement line (often referred to as the front property line). Due to safety considerations, parkways shall not be used for storing or permanently parking vehicles or materials. Exception can be made for temporary use during construction. Provision for permanent parking of vehicles must be provided within an owner's property. Parking of vehicles on parkways for an extended period of time is prohibited. The vehicles prohibited by the Building Code from extended parking on parkways (whether on surfaced or unsurfaced portions of the street right-of-ways) shall include automobiles, trucks, boats, trailers of all types, and recreational vehicles.

**An extended period of time** shall be defined as parking on any part of the prohibited area for more that forty-eight (48) hours in **any** seven (7) day period, whether the forty-eight hours be continuous or interrupted, for house guests who otherwise have nowhere to park.

Vehicles or material parked or stored in violation of these restrictions will be tagged by Security and the lot owner will be notified of the violation. If the vehicle or material is not removed within thirty (30) days, the Hide-A-Way Lake Club shall have the right to remove the material or vehicle to the storage location and charge the removal and storage costs back to the lot owner.

(7) **Construction.** Compliance with the Building Code is required in regard to concrete truck regulations, foundation specifications, fireplace specifications, culvert specifications and regulations, contractor regulations, and building trash regulations.

During lot preparation and ensuing construction, the contractors and lot owner shall exercise due diligence to ensure:

3

(a) that natural drainage is not obstructed or diverted and

(b) that any soil and/or building materials (such as top soil, fill dirt, gravel, sand, trash, etc.) are not deposited onto any other lot owner's property or onto Hide-A-Way Lake Club property (including drainage ditches) by rains, winds, or any other means, deliberate or accidental.

**In the event of non-compliance whether damage is a fact or impending, the CLUB shall have the right to immediately suspend the Building Permit until such time as the CLUB agrees that the damage to other property has been corrected and/or that appropriate steps have been taken to prevent impending damage to any other property. Any costs incurred by the CLUB in correcting such damages shall be borne by the Owner. Notice of such action by the CLUB shall be give to the Contractor and the Owner.**

**In cases of Building Code violations, the CLUB has the right to levy a fine on Hide-A-Way Lake Club Member Contractors; and, the CLUB has the right to refuse access to Hide-A-Way to those Contractors who are non-members of Hide-A-Way Lake Club.**

**No building permit will be issued for subsequent projects where the Owner and/or Contractor is responsible for an unresolved violation.**

(8) **ELECTRICAL.** All electrical work shall comply with the Building Code.

(9) **PLUMBING.** All plumbing including potable water systems, waste treatment systems, lawn sprinkler systems, and swimming pools and spas shall be installed in accordance with the Building Code, applicable ByLaws, and all Federal, State, or local authority regulations.

## IV. GENERAL REGULATIONS

A. Hide-A-Way Lake Club shall have the right to enforce all rules and regulations currently in effect or as they may be amended from time to time by the Board of Directors; and, the right to enforce any new rules and regulations made by the Board of Directors.

These rules and regulations shall include, but shall not be restricted to, rules for usage of the Lodge, Lake Room, and Pro Grill facilities; Swimming Pool and Beach Rules; Golf Rules and Regulations; Signage Rules and Regulations; Animal Control Regulations; Lake and Park Recreations Rules and Regulations; Security Regulations including Traffic Control; the Hide-A-Way Lake Club Building Code; and the ByLaws of Hide-A-Way Lake Club and Hide-A-Way Lake Homeowners.

The Board of Directors shall have the right to enforce these rules and regulations by appropriate means including, but not restricted to, the right to levy fines for violations.

B. The pumping of water from any lakes or ponds is prohibited except by special permit, in writing, granted by Hide-A-Way Lake Club.

C. No water well shall be drilled upon any of the said numbered lots by the owners so long as water for domestic uses shall otherwise be available to the owners of said lots, but nothing herein contained shall be construed as prohibiting Hide-A-Way Lake Club, its successors, assigns, or nominees from drilling a well, or wells, on any property located in or near the Club boundaries for the purpose of supplying water to the owners of any property in the said Club boundaries or in any addition thereto; provided, however, that until water is available to the owners of any of said lots, Hide-A-Way Lake Club will grant written permits, upon proper application, for the drilling of temporary wells and for the temporary operation thereof said water for domestic uses shall become available to said owners.

D. To protect the health and well being of Hide-A-Way residents, no animals, livestock, or poultry of any kind shall be kept on any lot, except well-behaved household pets shall be allowed. Animals

4

which interrupt the quiet of the neighborhood or cause reasonable concern for safety of persons, pets, or property are prohibited.

All households must comply with the Hide-A-Way Lake Club, Inc., **Animal Control Regulations** in effect at the time these covenants, conditions, and restrictions become effective or as such **Animal Control Regulations** may be later amended and revised.

E. All signs, billboards, or advertising structures of any kind are prohibited except for those allowed in the Hide-A-Way Lake Club, Inc., **Signage Rules and Regulations.**

All households must comply with the Hide-A-Way Lake Club, Inc., **Signage Rules and Regulations** either in effect at the time these covenants, conditions, and restrictions become effective or as the Signage Rules and Regulations may be later amended and revised.

F. Outside burning of leaves, trash, etc., is not permitted. Use of outside barbecue equipment for cooking purposes where fire is contained and carefully supervised is permitted.

G. The use of firearms within the Hide-A-Way Lake Club, Inc., boundaries is prohibited except in areas that may be designated for such purpose by Hide-A-Way Lake Club.

H. No noxious or offensive activity shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to lot owners within the Club boundaries.

I. No stripped down, partially wrecked, or junked motor vehicle or sizable part thereof shall be permitted to be parked on any street, parkway, lot, Club storage area, or any other property within the club boundaries.

Vehicles must be currently licensed and comply with safety regulations as stated in the Security Rules and Regulations of Hide-A-Way Lake in effect at the time and as amended.

J. All lots, whether occupied or unoccupied, and any improvements placed thereon shall at all times be maintained in such a manner so as not to become unsightly or dangerous to life or property by reason of dead trees, unattractive growth (such as overgrown weeds or grass), or the accumulation of rubbish or debris thereon. No garbage or other refuse shall be dumped, stored, or accumulated on any lot or be thrown on any lot or into the lakes.

K. Any structure which may be destroyed in whole or in part by fire, windstorm, vandalism, or other means must be rebuilt or all debris removed and the lot restored to a sightly condition with reasonable promptness; provided, however, that in no event shall such debris remain longer than ninety (90) days. After the ninety (90) days, the Club must consider such structure an abandoned "attractive nuisance" and the Club must take action to bring into compliance the structure and/or lot as allowed in IV-L thereby protecting the safety of other Hide-A-Way members and property.

L. Thirty (30) days after Hide-A-Way Lake Club has mailed to the property owner a **Notice of Violation** of these **GENERAL REGULATIONS**, Hide-A-Way Lake Club shall have the right to undertake and perform or contract for the work or other action necessary to protect Hide-A-Way members and property from such dangerous conditions or to bring into compliance any lot and/or improvements thereon which are in violation of these **GENERAL REGULATIONS**; and, Hide-a-Way Lake Club shall further have the right to charge reasonable costs back to the lot owner for such expenses incurred.

## V. OPERATION AND MAINTENANCE OF RECREATIONAL, SOCIAL, AND

5

**CULTURAL FACILITIES**

A.  No sale, transfer, lease, or other disposition of any lot within the boundaries of Hide-A-Way Lake Club shall be consummated unless and until the purchaser or transferee has applied for and has been approved as a member of Hide-A-Way Lake Club, Inc., its successors or assigns, and hereinafter referred to in Paragraph V.-B.  This restriction shall not apply, however, to lenders who may bid said property in at any foreclosure sale brought by them without regard to such membership restriction, nor shall it apply with respect to a transfer of such property pursuant to a duly probated Will or by virtue of the intestacy laws of the State of Texas.

The exclusion of membership for lenders who obtain ownership through foreclosure shall not be applicable if such lender thereafter uses the property for lender's own benefit (i.e., lives on property, leases property, etc.).

B.  Upon approval of an application for membership in Hide-A-Way Lake Club and the simultaneous execution of a Contract for Deed or the acceptance of a Deed, each owner shall become a member of Hide-A-Way Lake club, Inc.

Said membership shall be conditioned upon observance of the rules and regulations established by said club for the benefit and general welfare of its members and for the official operation thereof. Said membership shall also be conditioned upon payment, when due, of such dues, fees, and charges as the club shall find necessary for the maintenance of the club facilities and services, including but not limited to the maintenance of lanes, roads, parks, lakes, and any other services and benefits which said club may provide for the benefit of the lots, club facilities, and members.

By acceptance and retention of title to any lot within the boundaries of Hide-A-Way Lake Club, each Grantee, his heirs, and assigns who are or become members of Hide-A-Way Lake Club do hereby covenant and agree that said Hide-a-Way Lake Club, its successors, and assigns shall have a lien upon the subject lot or lots second only to liens for taxes and any duly-recorded mortgage to secure the payment of the aforementioned dues, fees, and charges, including court costs and reasonable attorney fees incurred in connection with the collection of the same, it being agreed and understood that this covenant and agreement shall be in addition to and shall not be affected by such contracts, security agreements, and applications as such Grantees, their heirs, or assigns may enter into with Hide-A-Way Lake Club.

C.  Notwithstanding anything to the contrary contained herein, Hide-A-Way Lake Club, its successors, and assigns reserves for itself and its designated agent or agents the right to use any Club-owned lot, or lots, within the Club boundaries for a temporary office location together with further right to dedicate and/or use such lots within the said Club boundaries as they may deem necessary or desirable for the use or benefit of property owners and Club members.

## VI. TERM OF COVENANTS, CONDITIONS, AND RESTRICTIONS

A.  These newly-approved restrictions, covenants, and conditions may be enforced by Hide-A-Way Lake Club, Inc., and/or Hide-A-Way Lake Home Owners, Inc., herein or by the owner of any lot within the Club boundaries, either by proceedings for injunction or to recover damages for breach thereof, or both.

However, only the said Hide-A-Way Lake Club heretofore referred to, its successors, or assigns may file suit to collect any of the charges and expenses mentioned in Section V of these said restrictions, covenants, and conditions to enforce foreclosure of any lien therein granted, with said suit to be filed in any Court of competent jurisdiction and with venue to be in Smith County, Texas.

6

B. These restrictions, covenants, and conditions are to run with the land and shall be binding on all parties and all persons claiming under them until April 25, 2002, after which time said restrictions, covenants, and conditions shall be automatically extended, for successive periods of ten (10) years unless an instrument signed by a majority of the lot owners in said Unit Subdivisions has been recorded, agreeing to a change in said restrictions, covenants, and conditions in whole or in part.

If any portion of these restrictions, covenants, and conditions shall be declared invalid by judgment or Court order, it shall not affect the validity of any other provision or portion thereof.

7

Hide-A-Way Lake Club, Inc.

Jean Cox, Board President

Hide-A-Way Lake Club, Inc.

Joe Dillard, Board Vice-President

This instrument was acknowledged before me by Hide-A-Way Lake Club Board President, Jean Cox, and Hide-A-Way Lake Club, Inc. Board Vice-President this 24 day of January , 2007.

JOAN A. HAYES
(SEAL) lic, State of Texas
My Commission Exp. 06-26-2007

Notary Public, State of Texas

# EXHIBIT 2



**Document Number:** 202201018788

Real Property Recordings
BY LAWS

Recorded On: May 13, 2022 09:49 AM

Number of Pages: 21

Billable Pages: 20

**" Examined and Charged as Follows: "**

Total Recording: $102.00

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**

| | |
|---|---|
| Document Number: | 202201018788 |
| Receipt Number: | 20220513000039 |
| Recorded Date/Time: | May 13, 2022 09:49 AM |
| User: | Adrius K |



**STATE OF TEXAS**
**Smith County**
**I hereby certify that this Instrument was filed in the File Number sequence on the date/time**
**printed hereon, and was duly recorded in the Official Records of Smith County, Texas**

Karen Phillips
Smith County Clerk
Smith County, TX

*Karen Phillips*

Ex. A (Affidavit) - Page 18

# BYLAWS
# HIDE-A-WAY LAKE CLUB, INC.

**Revised 04-18-22**

## ARTICLE I. PURPOSE

**Section One**. The purpose of Hide-A-Way Lake Club, Inc., is to acquire, construct, manage, maintain, and care for Club property, the rights and the interests of the owners of lots, residences, or residential units, and to operate and maintain the recreational, social, and cultural facilities for the exclusive use of Hide-A-Way Lake Club, Inc. (hereinafter referred to as "the Club" or "Club"), members, and their guests.

**Section Two**. All charters, bylaws, and regulations of corporations, associations, or other entities interconnected with the Club, shall be consistent with the bylaws of the Club. The bylaws of the Club shall be controlling if any conflict is found between any charters, bylaws, and regulations of corporations, associations or other entities interconnected with the Club.

## ARTICLE II. OFFICES

Section One. **Principal Office.** The principal office of the Club shall be located on the premises known as Hide-A-Way Lake Club, Inc., 101 Hide-A-Way Lane Central, Hideaway, Smith County, Texas, 75771.

Section Two. **Registered Office.** The Club shall have and shall continuously maintain a registered office and a registered agent whose address is identical with such registered office as required by the Texas Non-Profit Corporation Act. The registered office may, but need not be, identical with the principal office. The address of the registered office and designation of the registered agent shall only be changed by the Board of Directors.

## ARTICLE III. MEMBERS

Section One. **Qualifications.** All persons who are owners of membership lots in Hide-A-Way Lake or Lake Hide-A-Way Subdivisions in Smith County, Texas, shall be qualified to be elected as members of the Club, by action of the Board of Directors and upon the recommendation of the Membership Committee. Notwithstanding the preceding sentence, in the event fee title to any membership lot is owned by an entity, including, but not limited to trusts, partnerships, and other joint holdings, said entity shall be deemed the member, with only two (2) designated individuals of the group of owners of such membership lot to be qualified to be elected as members of the Club at any time. All other owners of such membership lot have guest status only and are subject to all rules and regulations applicable to members. In the event where a membership lot is owned jointly by more than one individual, all owners shall be deemed members of the Club, but shall designate only two (2) individuals of the group of owners of such membership lot to be qualified for full membership privileges related to access and use of common areas of responsibility. All other owners shall be deemed to have guest status only and are subject to all rules and regulations applicable to members.

The Club shall require, in order to determine membership eligibility or rights, submission of all appropriate documentation relating to ownership or marital status, including, but not limited to, information relating to inheritance, transfers of property, separation or divorce agreements, and similar relevant information.

Section Two. **Family Members.** Members' children who are unmarried, under twenty-five (25) years of age, and either residing with their parents, actively serving in the armed forces of the United States, or attending full time an institution of higher learning, shall be allowed to use facilities of the Club, subject to parental approval. Members' spouses who have no ownership interest in membership lots shall be allowed to use facilities of the Club, so long as their spouses remain members,

Page 1 of 20

but the extension to them of this privilege does not confer any personal or property rights on such non-member spouses. All persons described in this section shall have no other membership privileges or rights and are subject to all rules and regulations applicable to members.

Section Three. **Definitions.**

(A) Membership Lot: Any platted lot which is a part of Hide-A-Way Lake or Lake Hide-A-Way subdivisions in Smith County, Texas, to which a membership is attached.

(B) Restricted Use Lot: Any platted lot which is part of the Hide-A-Way Lake or Lake Hide-A-Way subdivisions in Smith County, Texas, which is dedicated to use as road, parking lot, or other common purpose, or which is unsuitable for residential construction as determined by the Board of Directors, and to which no Club membership is attached.

(C) Master Lot: The membership lot designated as "Master" by the owner(s). All membership dues, charges, and related paperwork shall be, for record-keeping purposes, connected to this membership lot. The "Master" Lot provides voting rights to owners. Under no circumstances shall any membership designate more than one (1) lot as "Master".

Section Four. **Application.** All applicants for membership shall file with the administrative office of the Club a written and notarized application in such form as the Board of Directors may specify from time to time. The application shall then be presented to the Membership Committee for consideration and investigation. Not later than forty-five (45) days after the application is filed, the Membership Committee shall submit its recommendation to the Board of Directors if no further information is requested by the Membership Committee. If the Board requires further information from the Membership Committee or the applicant it shall be submitted to the Board within fourteen (14) days. The Board of Directors then shall either accept or reject the application. A majority vote of the Board of Directors shall be required for acceptance of a member. Grounds for rejection of membership shall include, but not be limited to the following: (a) the inability of the Board to confirm identity of the applicant, ownership of the property, or the identity of anyone who may reside on the property, (b) evidence that the applicant or anyone who may reside on the property has a history of a criminal background, breaching, or not complying with federal, state, local laws, private club or HOA rules, regulations, and bylaws, (c) and FICO or other credit rating agency of less than "GOOD" credit pursuant to guidelines of the rating agency. An applicant who has been rejected may not reapply for membership within one (1) calendar year from the date of rejection. The Board of Directors and the Membership Committee shall keep written minutes showing the meeting date, the names of persons admitted to membership, and the names of any persons whose membership was rejected.

Section Five. **Voting Rights**. A Master Lot shall be entitled to two (2) votes on any proposition submitted to a vote of the members of the Club. Any such membership's voting rights shall be limited to the votes associated with the Master Lot. Division of ownership of any Master Lot shall not increase the voting rights allocable to such lot, and in no event shall more than two (2) votes be cast with respect to anyone (1) Master Lot. In the event fee title to any Master Lot be owned by more than one (1) person or entity, the vote of a majority of such ownership constitutes the vote allocable to such membership, and any dispute as to what constitutes a majority of such owners shall be determined by the Board of Directors of the Club, and such determination is final.

Section Six. **Member Rules Compliance**. Membership in the Club includes the obligation and condition of compliance with these bylaws, with deed restrictions or restrictive covenants applicable to a member's property, and with other rules and regulations issued under the authority of the Board of Directors. Compliance with Club bylaws, restrictions, rules, and regulations shall be pursued as set forth below.

(A) *Notifications*. Notifications of violations and penalties shall be given by the general manager or his/her designee as required by the Texas Property Code (hereinafter referred to as "TRP") Section 209.006.

Page **2** of **20**

(B)*Informal Review*. Penalties may, at the violator's option, be initially appealed to the general manager. The general manager may, after a review of available evidence: (1) determine that there is insufficient evidence to justify adjusting the penalty; (2) determine that there is sufficient evidence to justify and uphold the penalty; (3) or determine that there are facts or circumstances that justify mitigating the penalty. Neither a request for informal review by the general manager nor his disposition of the request affects the violator's rights to a hearing before the Board of Directors, nor does a request for an informal review affect the requirements for requesting a hearing in a timely manner.

(C)*Hearings*. The Board of Directors shall conduct hearings: (1) on matters for which a member requests a hearing under the requirements of TRP Section 209.007; (2) and on matters involving repeated or serious violations referred to the Board of Directors, by the chief of security, or the general manager.

(D)*Formal Hearing Procedures*. The Club and the member have the right to present witnesses and to have counsel present at the hearing. Packets must be sent to the owner a least 10 days before the hearing with the evidence the association intends to introduce. Evidence can include documents, photos, communications, etc. Failure to provide this packet allows the member the right to a 15day postponement.. The Board will present its case first and the member will have the chance to give information in response. Questions shall be directed to the President of the Board , and the President of the Board or other Board members may be allowed to ask questions.

(F) *Hearing Decisions*. Following the hearing, the Board of Directors shall decide: (1) to confirm the penalty previously assessed under Club rules; (2) to adjust the penalty; (3) to allow the performance of community service as an alternative to other penalties; (4) to suspend any or all privileges; (5) and/or to levy fines of up to five hundred dollars ($500) per offense, as specified by rules and regulations adopted by the Board of Directors. If a member is suspended by action of the Board of Directors, reinstatement shall be by authority of the Board of Directors.

Section Seven. **Suspension and Expulsion.** In addition to other provisions of these bylaws which may result in member suspension, the Board of Directors, by affirmative vote of two-thirds (2/3) of the members of the Board, may suspend from Club privileges and/or expel from Club facilities and common property (with the exception of travel to and from a member's own property) any member, family member of a member, or a non-member resident for cause shown after appropriate notice and hearing. Causes for suspension of Club privileges or expulsion from Club property may include serious or repeated violations of Club bylaws, rules or regulations, violations of deed restrictions or restrictive covenants, and acts or conditions which represent a threat to the health, safety, or welfare of other members, residents, or guests. A member, family member of a member, or a non-member resident cited for potential suspension and/or expulsion shall receive written specification of charges, and may request a hearing before the Board of Directors as described above in Section 6. Suspension and/or expulsion of a member shall not relieve the said member from obligation to pay all dues or charges accruing against any lot or lots owned by the said member.

Section Eight. **Reinstatement.** The Board of Directors may, by two-thirds (2/3) vote of its members, reinstate to Club privileges a member, a family member of a member, or a non-member resident who has submitted a written request for such reinstatement. Any suspended or expelled member shall fully satisfy any delinquent dues and charges owed before reinstatement.

Section Nine. **Transfer**. Membership in the Club is not transferable, except by inheritance or transfer by will, trust instrument, or family settlement agreement, subject to meeting the membership requirements defined in Sections One through Four of this Article.

Section Ten. **Identification and Registration**. The Board of Directors may, at its discretion, require identification and registration as a condition of use of Club facilities in order to assist in planning, regulation, or operational efficiency, on either a permanent or temporary basis.

Page **3** of **20**

Section Eleven. **Liability of Member**. Each member shall be liable for all charges made by use of any card issued at a member's request or instruction. Each member shall be liable for any damage to Club property caused by the member, guests, or tenant of the member.

Section Twelve. **Private Clubs.** All members of the Club are eligible to become members of any private club created by the Board of Directors in accordance with rules, regulations. and conditions prescribed by the Board of Directors.

## ARTICLE IV. MEETINGS OF MEMBERS

Section One. **Annual Meeting.** An annual meeting of the members of the Club shall be held in April each year on a day and time selected by the Board of Directors. The purposes of the meeting are: (a) to provide a formal report to the membership on financial condition of the Club, the status of major projects, and any major issues or concerns identified by the Board of Directors; (b) and to ratify the actions of the Board of Directors since the previous annual meeting.

Section Two. **Informational Meetings**. Special community meetings to provide the membership with information on important matters of Club business or to provide information on matters to be considered in a general membership referendum may be called by the Board of Directors by a majority vote of its members.

Section Three. **Notices of Meetings.** Notices of meetings of the members shall be given by three (3) of the following methods: (a) written or printed notice transmitted to each membership eligible to vote by United States mail at the most current address according to the Club records mailed not less than ten (10) nor more than sixty (60) days in advance of the meeting; (b) prominently published notice in a newspaper of general circulation in the community published not less than ten (10) nor more than sixty (60) days in advance of the meeting; (c) by electronic email not less than seventy-two (72t) hours before the start of the meeting to an email address provided by the member; (d) posting the notice in a public location at the exterior of the Club administration building not less than seventy-two (72) hours in advance of the meeting; (e) or posting on the Club web site not less than seventy-two (72) hours in advance of the meeting. Such notice is not subject to waiver and shall be given in sufficient detail to clearly identify the subject matter involved.

## ARTICLE V. BOARD OF DIRECTORS

Section One. **General Powers.** The affairs of the Club shall be managed by a Board of Directors which is responsible to the membership for its authority and actions. The Board of Directors is empowered to employ such personnel as necessary to conduct the business of the Club. The Board of Directors shall take official actions only as a collective body, and no director shall, without specific authorization by the Board or specific authority set forth under these bylaws, act on behalf of the Board.

Section Two. **Number, Tenure, and Qualifications.** The number of directors shall be twelve (12). Each director shall be chosen in the manner specified elsewhere in these bylaws. The term of each director shall be for three (3) years except as provided in Section Three of this Article. The terms shall be staggered so that four (4) terms expire each year and four (4) directors are elected each year.

Any individual that owns property within the Hide-A-Way Lake or Lake Hide-A-Way subdivisions in Smith County, Texas is eligible to run for a position on the Board of Directors. If an entity owns property in the Hide-A-Way Lake or Lake Hide-A-Way subdivisions in Smith County, Texas only the individuals qualified as members of the Club under the terms of Article III, Section 1, of these bylaws, are eligible to run for a position on the Board of Directors on behalf of that entity. Any individual shall be immediately ineligible to serve on the Board, if the member has been convicted of a felony or crime involving moral turpitude within the last twenty (20) years.

Page 4 of **20**

Section Three. **Vacancies.** Any vacancy occurring in the Board of Directors for any reason shall be filled by the affirmative vote of a majority of the remaining directors. A director so designated to fill a vacancy has the same voting rights as the elected directors and serves for the remainder of the unexpired term of the replaced director.

Section Four. **Meetings.** Board meeting means a deliberation between a quorum of the voting members of the Board of Directors of the Club or between a quorum of the voting members of the Board of Directors and another person, during which Club business is considered and the board takes formal action. The agenda for the meetings shall be prominently posted at the office of the Club, placed on the Club web site and sent by electronic email to an address provided by the member. If a member provides the Club an email address, it is the member's responsibility to advise the Club of an updated email address.

Section Five. **Regular Board Meetings.** The Board of Directors shall hold at least one (1) regular meeting each month at a time and place determined by the Board. The agenda and notice shall be given by three (3) of the following methods: (a) written or printed notice transmitted to each membership eligible to vote by United States mail at the most current address according to the Club records mailed not less than ten (10) nor more than sixty (60) days in advance of the meeting; (b) by electronic email not less than one hundred forty-four (144) hours before the start of the meeting to an email address provided by the member; (c) posting the notice in a public location at the exterior of the Club administration building not less than five (5) days in advance of the meeting; or (d) by placing on the Club web site not less than one hundred forty-four (144) hours before the start of the meeting.

Section Six. **Special Board Meetings.** The President or any three (3) members of the Board may call a special meeting to consider the agenda items embodied in the call. Notice of such meeting shall be given by telephone, electronic message, or in person to each Board member not less than seventy-two (72) hours prior to the specified time of the meeting. Increases in dues, fees, or charges are expressly excluded from consideration at special meetings. The agenda and notice shall be given: (a) by electronic email not less than seventy-two (72) hours before the start of the meeting to an email address provided by the member; (b) posting the notice in a public location at the exterior of the Club administration building not less than seventy-two (72) hours in advance of the meeting; and (c) by placing on the Club web site not less than seventy-two (72) hours before the start of the meeting.

Section Seven. **Informal Meetings.** Informal meetings of the Board of Directors are defined as a meeting wherein there is a quorum of members of the Board of Directors and no binding action shall be taken. The Board of Directors may hold informal meetings to receive reports and testimony and to discuss Club-related business. The Board may, and is encouraged to, make use of special skills, knowledge, and interests of Club members in connection with Club affairs. Seventy-two (72) hours' notice to Board members, by telephone, electronic message, or in person, is required to call an informal meeting. The agenda shall be given at least seventy-two (72) hours prior to the time set for such meeting as required in Article Five Section Four.

Section Eight. **Adjourned or Recessed Meetings.** If the board adjourns or recesses a regular board, special board, or informal meeting, the board is required to post notice as indicated in Article (V)(Sec.(4)if the meeting is postponed for more than one (1) business day. The notice shall be made no more than two (2) hours after recessing of the meeting.

Section Nine. **Emergency Meetings.** There may be occasions where there is an emergency of such consequence that it would be unprofitable or present a potential liability for the membership of the Club if immediate action is not taken. The President of the Board of Directors, with the approval of one other officer of the Board of Directors, may call an "Emergency Board Meeting". This meeting shall meet the requirements of TRP 209.0051(h). The emergency board meeting shall not be subject to notification requirements of Article Five Section Four.

Section Ten. **Conduct of Meetings.** The physical presence of a majority of the members of the Board of Directors constitutes a quorum and each Board member is entitled to vote. However, in the event of a natural disaster or public health and safety

crisis, the Board President may conduct a meeting by audio and/or visual electronic means. In these crises, the situation can change from day to day. Board members should be guided by local, state, and federal authorities (such as the CDC) and board decisions should be reasonable based on that guidance. All members of the board may participate in a meeting by means of conference telephone or other means of remote communication if all individuals who are participating in the meeting can communicate with the other participants. Participation in a meeting under this subsection constitutes attendance in person at the meeting. Board members will have the option to either attend the meetings in person or remotely. Regardless of the number of Board members physically present, an affirmative vote of the majority of all members of the Board is required for the passage of any proposal, unless a greater number is required by these bylaws. The Board may adjourn any meeting to a specified date and time in order to dispose of matters remaining from its previously announced agenda. Participation by Club members in inquiries, testimony, and comments is at the discretion of the presiding officer, subject to the overriding vote of a majority of the members of the Board of Directors. Strict decorum will be maintained, and all matters of procedures are governed by Robert's Rules of Order, newly revised, except where such rules conflict with the express terms and provisions of these bylaws, or rules and regulations adopted by the Board. Voting by proxy is not allowed.

Section Eleven. **Open Meetings.** All official actions of the Board, except those for which executive (closed) sessions are authorized, shall be taken in open regular or special meetings after required notice and publication of agenda items. Required notice of such meetings shall not be waived. All meetings of the Board of Directors are open to Club members except closed executive sessions to consider the following matters: (a) actions involving personnel; (b) pending or threatened litigation; (c) contract negotiations; (d) enforcement actions; (e) confidential communications with the Club's attorney; (f) or matters involving the invasion of privacy of individual owners or matters that are to remain confidential by request of the affected parties and agreement of the Board. All discussions in a closed executive session shall be considered confidential and shall not be disclosed unless there is a legal requirement to disclose. Following an executive session, any decision made in the executive session shall be summarized orally and placed in the minutes, in general terms, without breaching the privacy of individual owners, violating any privilege, or disclosing information that was to remain confidential at the request of the affected parties. The oral summary shall include a general explanation of expenditures approved in executive session.

The Board shall keep a record of each regular or special meetings in the form of written minutes of the meeting. The Board shall make meeting records, with the exclusion of closed executive sessions, including approved minutes, available to a member for inspection and copying on the member's written request to the Club's managing agent or to the Board.

Section Twelve. **Compensation.** No director or committee member shall receive remuneration for his services other than reimbursement for reasonable expenses incurred in connection with Club business and authorized under policies established by the Board of Directors.

Section Thirteen. **Censure and Removal.** By two-thirds (2/3) vote of the Board of Directors, any director may be removed from office for: (a) cause specified in these bylaws; (b) or cause set forth in any applicable state law for the removal of such officers. Cause for removal includes but is not limited to: (a) conviction of a felony or a crime of moral turpitude; (b) conflict of interest; (c) failure to disclose financial interests in matters before the Board; (d) gross mental or physical incapacity which renders participation in the business of the Board impossible; (e) abuse of authority; (f) and/or excessive absence. Abuse of authority includes: (a) actions outside specified authority; (b) actions in violation of bylaws, rules, regulations, or other Club governing documents; (c) improper and/or unauthorized representations of Board policies, rules, regulations, or other governing documents; (d) and/or issuance of orders or instructions to employees. Excessive absence means absence from more than twenty-five (25) percent of the scheduled regular meetings of the board in a twelve (12) month period.

By majority vote of the Board of Directors, any director may be censured (formally rebuked or reprimanded). Causes for censure include but are not limited to: (a) conflict of interest; (b) abuse of authority; (c) and/or excessive absence.

Page **6** of **20**

Any director cited for potential censure or removal from office shall receive a written specification of charges, a public hearing after due notice, and an opportunity to call witnesses and cross-examine witnesses either personally or by counsel, any of which rights may be waived by the director in question. Votes on censure or removal shall be taken by written ballot. Resignation from office shall terminate all proceedings that might result in censure or removal against a director without impairing his or her right to seek re-election at the next regular election of directors.

Upon filing of a petition for removal of a director or directors bearing the signatures of not less than twenty percent (20%) of the members of the Club, the Board of Directors shall call for a vote by the members of the Club, to determine by simple majority of those voting if the director in question shall be recalled from office. The petition shall state in not more than two hundred (200) words specific reasons why any such director or directors should be removed.

Section Fourteen. **Conflict of Interest.** A director shall abstain from advocacy of or voting on any matter which involves an actual or potential conflict of interest between the director's personal relationships or those of the director's immediate family and the affairs of the Club. A director shall not advocate, participate, or vote in matters involving any business, partnership, organization, or corporation of which the director or a member of the director's family is an owner, partner, director, chairperson, officer, employee, trustee, or a person in a position of authority or leadership. A director shall accept nothing of material value from any person doing or seeking to do business with the Club, under penalty of removal from office, and shall not exhibit favoritism toward any individual doing business with, employed by, or holding membership in the Club.

Section Fifteen. **Rules and Regulations**. The Board of Directors may, at its discretion, adopt procedural rules for the Board and the Club, and shall enact rules and regulations governing use of Club facilities consistent with these bylaws or governing rules and statutes, necessary for the health, safety, and welfare of the membership and the maintenance and protection of the Club's facilities and other assets. The Board of Directors is authorized to initiate and proceed with all legal remedies, including but not limited to filing of judicial proceedings, to ensure enforcement and compliance with the Club rules and regulations.

Variances to the Club Rules and Regulations adopted by the Board of Directors shall not be granted by the General Manager. The Board of Directors shall not approve variances to the Rules and Regulations without a hearing involving the members requesting the variance. Rules and regulations variance hearings may be held by a committee designated by the Board of Directors which may recommend the variance to the Board of Directors for approval. Such Board approved variances are only for the member involved in the variance request and shall not create a binding change to the rules and regulations.

Section Sixteen. **Construction Standards and Building Code.** The Board of Directors shall adopt and require enforcement of appropriate standards governing all construction within the boundaries of the Club. It shall require the issuance of permits prior to the following: (a) construction of any structure; (b) clearing of land, prior to or as a part of any construction; (c) major alteration and/or additions to any existing structure; (d) and installation of sanitary and other facilities as a part of any construction. The Board shall prescribe conditions for land usage designed to protect health and property, and for environmental protection and enhancement. The Board of Directors is authorized to initiate and proceed with all legal remedies, including but not limited to filing of judicial proceedings, to ensure enforcement and compliance with the Club construction standards and building code.
Variances to the Club Construction Standards and Building Code adopted by the Board of Directors shall not be granted by the General Manager. The Board of Directors shall not approve variances to the Construction Standards or Building Code without a notification to the owners of lots within a 300-foot radius of each corner of the lot requesting the variance that a variance meeting will be held and the subject of that meeting. Construction Standards and Building Code variance hearings may be held by the Property Stewardship Committee or by a committee designated by the Board of Directors which may recommend the variance to the Board of Directors for approval. Such Board approved variances are only for the property involved in the variance request and shall not create a binding change to the Construction Standards and Building Code.

Page 7 of **20**

Section Seventeen. **Management and Personnel**. Management of Club services, operations, and personnel shall be carried out by a general manager appointed by – and subject to removal by – the Board of Directors. The general manager shall be appointed based on his or her professional qualifications and experience. The general manager shall have the duties and responsibilities set forth in a job description and Code of Ethics approved by the Board of Directors. The general manager shall affirm by signature, a Code of Ethics, upon entering employment with the Club. The general manager shall be held accountable by the Board of Directors for the expectations identified within the job description and Code of Ethics. Board members shall not give direction, supervision, or direct criticism to department heads or other employees. If a situation arises the board member and the general manager shall meet to discuss the board members concerns.

## ARTICLE VI. OFFICERS

Section One. **Officers.** The officers of the Club shall be a President, a Vice President, a Secretary, and a Treasurer, to be elected by the Board of Directors from among its membership.

Section Two. **Election and Term of Office.** The officers of the Club shall be elected by the Board of Directors at the first regular meeting of the Board in July of each year after the swearing in ceremony of the newly elected board members. Each officer shall hold office until his/her successor is qualified and elected. The election for President shall be conducted by the immediate past President and the election of the other officers shall be conducted by the newly elected President. No proxies are allowed in the election of officers. Voting shall be by closed ballot. The candidate for the office receiving the largest number of votes cast by those Board members present and voting shall be declared elected. The board clerk shall tally the votes and present them to the presiding officer for announcement of the results.

Section Three. **Appointed Officers.** The Board of Directors may appoint additional persons as needed, such as Assistant Secretaries or Assistant Treasurers. Such officers, if not members of the Board, have no vote, serve at the direction and pleasure of the Board of Directors, and have such duties or responsibilities as prescribed by the Board of Directors or by the principal officer being assisted.

Section Four. **Removal.** Any officer elected by the Board of Directors may be removed as an officer upon the affirmative vote of two-thirds (2/3) of the Board members.

Section Five. **Vacancies**. The Board of Directors shall elect a member from the Board of Directors to fill any vacancy of a Club board officer. The candidate for the vacancy receiving the largest number of votes cast by those Board members present and voting shall be declared elected. The election of said director shall be effective for the unexpired portion of the term of that office.

Section Six. **President**. The President shall be the presiding officer of the Club and shall perform all duties incident to the office of President designated by these bylaws and the Board of Directors. The President shall appoint all committee Chairpersons of active committees ( Membership and Finance are defined explicitly) of the Board, subject to approval of the board, except for the Elections Committee (Article XII) and the Audit Committee (Article VII). The President shall not chair any committee. The President is the direct supervisor of the general manager and shall maintain all personnel records for the general manager position. The President as direct supervisor of the general manager, without specific Board authorization, shall not give directions to the general manager. The President shall be responsible for faithful performance of duties by committees appointed under his/her authority and may, at his/her discretion, replace any non-performing committee member or committee chair. The President is an ex-officio, non-voting member of all committees.

Section Seven. **Vice President.** In the absence, inability, or refusal of the President to act, the Vice President shall perform the duties of President with the same powers and duties and subject to all restrictions applicable to the President. The Vice President shall perform other duties assigned by the President and Board of Directors.

Page **8** of **20**

Section Eight. **Treasurer**. The Treasurer, in addition to other duties as a member of the Board of Directors, shall be Chair of the Finance Committee and has general oversight of all funds and securities of the Club. The Treasurer shall appoint the members of the Audit Committee subject to board approval. The Treasurer is responsible for the presentation of a monthly financial report to the Board of Directors at the regular monthly board meeting. The monthly report shall be presented no more than ninety (90) days past the end of the reported month.

Section Nine. **Secretary**. The Secretary, in addition to other duties as a member of the Board of Directors, shall be chairman of the Membership Committee and is responsible for the safekeeping of minutes, whether by manual or electronic devices, of called meetings of the members and of the Board of Directors, and for ensuring that all minutes are made available to the members upon proper request in accordance with the provisions of the Texas Non-Profit Corporation Act. The Secretary shall: (a) see that all notices are duly given in accordance with the provisions of these bylaws or as required by law; (b) be custodian of the seal of the Club and see to its usage as prescribed by law or these bylaws; (c) be responsible for the maintenance and updating of a register of members bearing the post office address furnished by each such member along with such other information as may be required by the Board of Directors; (d) and shall perform such other duties as directed by the President and Board of Directors. The Secretary shall also ensure that any resolutions/motions passed by the Board of Directors pertaining to bylaws, rules or regulations are promptly entered into and made part of an updated version of the pertinent document.

## ARTICLE VII. COMMITTEES

Section One**. Board Committees.** The Board of Directors creates such standing or ad hoc committees as it deems necessary to provide advice, conduct research, or otherwise assist the full board in its work. Committee members shall be Club members. Such committees shall include, at a minimum, a Finance Committee, an Audit Committee, a Membership Committee, an Election Committee, and a Property Stewardship Committee. The Chairs of these committees are Board members except for the Audit Committee (see Section Four), and the Election Committee (see Article XII, section One). Other Board committee Chairs may be Club members with specific expertise or Board Members. The President appoints the Chairs of all committees with the exception of the Election Committee (Article XII Section One),and the Audit Committee (Article VII, Section Four). subject to approval of the Board of Directors. The committee Chairs and members are appointed from the date of board approval until the completion of the regular board meeting in July. The committee Chair shall recommend to the Board the membership of their committee for Board approval with the exception of the Audit Committee (see Section Four), and the Election Committee (Article XII, Section One). The committee Chair has authority to remove any committee member and appoint a replacement subject to approval by the Board. The committee Chair is responsible for the production and distribution of the minutes of their committee meetings. Meeting minutes shall be submitted to the Secretary within one (1) week of the committee meeting.

The Election Committee may make decisions as indicated in Article XII Sections Two and Four. The Audit Committee may make decisions as indicated in Article VII Section Four. Other committees shall only make action recommendations to the Board.

Section Two. **Committee Meetings**. Meetings of Board-established committees shall be prominently posted at the office of the Club and placed on the Club web site at least twenty-four (24) hours in advance. They shall be open to members in the same manner and to the same extent as Board of Directors meetings, except the Audit Committee shall be open only to the parties' involved and necessary staff members.

Section Three. **Finance Committee.** The Finance Committee is established to provide advice and assistance to the Board in its work. The committee reports to the Board.

Page 9 of 20

(A) Membership. The Finance Committee consists of the Treasurer, who is Chair, no more than an additional two (2) members of the Board and a minimum of four (4) other members of the Club, subject to Board approval. The General Manager and the Club Controller will participate in the meetings of the committee as ex-officio, non-voting members and assist the committee with its work.

(B) Responsibilities. The responsibilities of the Finance Committee are as follows:

1. To regularly review the Club's financial condition, including review of the Club's financial statements, budget variances, and other reports prepared by the Club's Controller.
2. To review and make recommendations regarding financial policies and procedures.
3. To participate with the General Manager and Club Controller in long range financial planning for the Club.
4. To review and make recommendations regarding the annual budget and capital budget.
5. To provide oversight of banking relationships, designated cash reserve balances, employee benefit and retirement plans and general insurance programs.
6. To make recommendations regarding accounting and financial management resources.
7. To maintain minutes of meetings and regularly report to the Board on the results of its assigned responsibilities.
8. To review, within ninety (90) days after each new Board takes office, no later than the regular October Board meeting, the latest internal and external audit reports to determine the extent to which recommendations have been implemented and to report to the Board the status of recommendations that have been accepted by the Board.

Section Four. **Audit Committee.** The Audit Committee is established to conduct an annual internal audit. The committee reports to the Board. The committee has authority to examine all Club records and to interview any Club employee where such examination and inquiry is directly related to the committee's assigned responsibilities.

(A) Membership. The Treasurer shall appoint the members of the Audit Committee subject to board approval.

1. The committee consists of three (3) members of the Club not including the Treasurer with a background in accounting, finance, auditing, investments, or a related field. The Treasurer shall be on the committee as an ex-officio non-voting member. No other board members shall be on the committee.

2. If less than three (3) cannot be found that have the necessary background in finance as described above, the Treasurer shall request the Board to obtain the services of a Certified Public Accountant or a Certified Public Accounting firm with a minimum of two bids based on written responsibility of duties based on (B) below. Any expenses associated with these services shall be approved by the Board prior to any contracting for the services.

3. The Club Controller shall meet with the committee and provide assistance or information as requested.

(B) Responsibilities. The responsibilities of the Audit Committee are as follows.

1. To test the reliability and integrity of the Club's financial reporting processes, controls, effectiveness, and efficiency of operations.
2. To test the processes in place to safeguard Club assets.
3. To test the processes in place to ensure compliance with laws, regulations, contracts, Club policies and Club procedures.
4. To identify significant financial risk exposures and recommend steps to monitor, control, and report such exposures.

Page **10** of **20**

5.  To prepare periodic reports to the Board of Directors and management regarding implementation of committee recommendations.

6.  To prepare follow-up reports to the Board of Directors regarding implementation of committee recommendations.

7.  To recommend the selection and appointment of independent external auditors, to review the auditors' engagement letter, scope of services, audit plan and audit schedules.   To recommend to the Board of Directors inclusion in any audit or financial review such specific tests or examinations as the committee deems pertinent.  To generally oversee the work of the independent auditors in preparation and issuance of a financial review or audit.

8.  To maintain minutes of meetings and periodically report to the Board of Directors on the results of its assigned responsibilities.

9.  To determine, within ninety (90) days after each new Board takes office, no later than the regular October Board meeting:  (a) the trial balance of the most recent month's account balances recorded in the general ledger reflects the actual totals recorded in the various accounts of the general ledger and is consistent with the last financial statements presented to the Board of Directors; (b) and the Club's actual bank account and investments balances are consistent with the cash balances reported on the recent financial statements. The Committee shall have the ability to utilize the services of the Club's external auditors to make these determinations if necessary.

## ARTICLE VIII.  FINANCIAL CONTROL

Section One.  **Contracts**. The President's signature and that of at least one (1) other officer shall be required on all documents authorized by the Board of Directors, including any deeds, mortgages, bonds, contracts, or other instruments which the Board of Directors and/or membership may have authorized to be executed. The Board of Directors may authorize any officer or the general manager of the Club, in addition to the officers so authorized by these bylaws, to enter into contracts or execute and deliver instruments in the name of and on behalf of the Club, and such authority may be general or confined to specific instances.  The general manager of the Club shall not enter into a contractual agreement with any party, when the representative of said party is a board member, without full disclosure to the Board of Directors and the Club membership, and approval from the Board of Directors. All contracts with any employee shall be authorized by the Board of Directors. All contracts shall be made available to a Club member on request.  All contracts with a length of one (1) year or more shall be retained by the Club for a period of seven (7) years.

Section Two.  **Checks, Drafts or Order of Payment**. All checks, drafts, or orders for payment of money, notes, or other evidence of indebtedness issued in the name of the Club shall be signed by such officers or authorized employees of the Club in such manner as shall be determined by resolution of the Board of Directors.

Section Three. **Deposit**.  All funds of the Club shall be deposited to the credit of the Club in such banks, trust companies or other depositories as the Board of Directors shall select and approve by resolution

Section Four.  **Bonding**.  Any person who handles financial matters on behalf of the Club shall be bonded.  Bonding shall be at the expense of the Club.

Section Five.  **Gifts**.  All or part of any memorial contribution, gift, bequest, or devise may only be accepted or rejected by the Board.  If accepted, it shall be accepted for any general or specific purpose of the Club, with the understanding that any contribution, gift, bequest, or devise of property (other than cash) may be moved, modified, sold, transferred, removed or abandoned at a later time if such action is deemed by the Board, in the exercise of its sole discretion, to be in the best interest of the Club.

Section Six. **Real Estate Transactions**. Real estate transactions, including but not limited to purchases, sales, and leases shall require prior approval and authorization by the Board of Directors, in such manner as not to unduly delay the real estate transaction. Purchases of real estate that will benefit the Club, but not expand the platted boundaries of the Club nor require capital expenditures exceeding one hundred thousand dollars ($100,000) (see Article XII, Section Six, b-2 and b-3), may be made with the approval and authorization of the Board of Directors. This provision shall not apply to sales of Club lots for which prices and/or negotiating authority have been specifically delegated by the Board of Directors to a Board-appointed committee or the general manager.

Section Seven. **Leases**. All capital leases in excess of seven thousand five hundred dollars ($7,500) per year shall be subject to approval by the Board of Directors. The general manager or his/her designee may execute any operating lease with a term of one (1) year or less without Board approval. The general manager shall notify the Board of such leases.

Section Eight. **Budget**. The general manager shall prepare with the active participation of the senior level supervisors, in line-item form, a proposed annual budget for all operating departments of the Club, including projected income, operating, and capital expenditures. Total labor projections by full time equivalent position and department shall be included in the proposed annual budget. The proposed annual budget shall be presented to the Finance Committee for study, questions, and approval no later than October 15th of each year. Departmental supervisors shall be made available upon the request of the Finance Committee to meet with either the entire committee or with study groups of the committee as determined by the Finance Committee Chair. Financial and individual payroll records requested by the Finance Committee shall be made available within five (5) business days of the request without any form of access denial on the part of Club employees. The budget shall, after review and approval by the Finance Committee, be submitted to the Board of Directors for consideration and shall be publicly presented to the membership for information. The Board of Directors shall adopt a budget which includes projected operating and capital income equal to or in excess of operating and capital expenditures. In addition, a projection, including all sources of revenue (including the various non-operating designated revenue sources), the operating profit result, and the projected capital expenditures, shall be submitted to indicate the overall uses and sources of cash and the incremental cash, if any, to be generated. The budget, including total labor force approval, shall be binding on the Board of Directors, Club management and Club employees unless amended by subsequent action of the Board of Directors. All budget changes must be voted on in open session during properly noticed meetings.

Section Nine. **Capital Expenditure Limitation**. The Board of Directors shall authorize any capital expenditures in excess of seven thousand five hundred dollars ($7,500).

Section Ten. **Fiscal Year**. The fiscal year of the Club begins on the first (1st) day of January and ends on the thirty-first (31st) day of December each year.

Section Eleven. **Financial Records**. The Club shall maintain correct, true, and accurate financial records with full and correct entries made with respect to all financial transactions of the Club, including all income and expenditures, in accordance with generally accepted accounting practices, and such information shall be reported at least quarterly to the members during Board of Directors meetings. All financial records of the Club shall be retained for a period of seven (7) years.

Section Twelve. **Annual Reports**. Based on these records, the Board of Directors shall annually have prepared and approve a report of financial activity of the Club for the preceding year. The report shall conform to accounting standards as promulgated by the American Institute of Certified Public Accountants and shall include a statement of support, revenue, expenses, changes in fund balances, functional expenses, and balance sheets for all funds.

Section Thirteen. **Tax Returns and Audits**. The annual Club tax return shall be prepared by an outside accounting firm. An accounting review conducted in accordance with Statements on Standards for Accounting Review Services (SSARS) or a full audit conducted in accordance with Generally Accepted Auditing Standards (GAAS) shall be performed annually by

Page **12** of **20**

independent auditors. A full audit shall be conducted at least once every two (2) years. An internal audit, conducted by the Audit Committee, shall also be conducted each year. All tax returns and audits of the Club shall be retained for a period of seven (7) years.

Section Fourteen. **Indemnification.**

(A)   Mandatory Indemnification: Directors or Officers Successful in Defense. The Club must indemnify any person or the estate of any deceased person, such person or estate of any deceased person being (hereafter throughout this Article referred to as "Person") who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, arbitrative, or investigative (hereafter throughout this Article Eight collectively referred to as "Proceeding") by reason of the fact that he/she is or was a director or officer of the Corporation, or is or was serving at the request of the Association as a director, officer, partner, venture, proprietor, trustee, employee, committee member, volunteer, agent or similar functionary of another foreign or domestic corporation, partnership, joint venture, trust, sole proprietorship, employee benefit plan or other enterprise (hereafter throughout this Article Eight collectively referred to as "Director") against expenses, including reasonable attorneys' fees, actually and reasonably incurred by them in connection therewith to the extent that he/she has been wholly successful on the merits or otherwise in defense of such Proceeding.

(B)   Indemnification Whether Successful or Not in Defense.

1.   The Club must indemnify any present or former director or officer of the Club, or the estate of such a person, who was or is a party or is threatened to be made a party to any Proceeding by reason of the fact that he/she is or was a Director, and the Club may indemnify any Person, other than a present or former director or officer of the Club, or the estate of such a person, who was or is a party or is threatened to be made a party to any Proceeding by reason of the fact that he/she is or was a Director or employee or agent of the Club, against expenses, including reasonable attorneys' fees, actually and reasonably incurred by them, and against judgments, penalties, including excise and similar taxes, fines, and amounts paid in settlement by them in connection therewith if he/she acted in good faith and in a manner he/she reasonably believed, in the case of conduct in their official capacity, to be in the best interests of the Club; or, in all other cases, to be not opposed to the best interests of the Club; and, with respect to any criminal Proceeding, if he/she had no reasonable cause to believe their conduct was unlawful; provided, however, that if he/she is found liable to the Club or is found liable on the basis that personal benefit was improperly received by them, the indemnification provided pursuant to this Article VIII, Section 14, (B), (a) is limited to expenses actually and reasonable incurred by them in connection with the Proceeding and (b) may not be made in respect of any Proceeding in which he/she has been found liable for willful or intentional misconduct in the performance of their duties to the Club. The termination of any Proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, will not, of itself, create a presumption that the Person did not act in good faith and in a manner which he/she reasonably believed to be in or not opposed to the best interests of the Club or, with respect to any criminal Proceeding, that he/she had reasonable cause to believe that their conduct was unlawful. A Person will be deemed to have been found liable in respect to any claim, issue or matter only after the Person has been so adjudged by a court of competent jurisdiction after exhaustion of all appeals.

2.   Notwithstanding any other provisions of this Article, the Club must indemnify any Person as to whom indemnification is fully mandatory under Sections 14(A) or Section 14(B)1 of this Article then permitted by law

(C)   Indemnification Procedure. Any indemnification under Section 14(B) of this Article, unless ordered by a court or made pursuant to a determination by a court, may be made by the Association only as authorized in the specific cause

upon a determination that indemnification of the Person is proper under the circumstances because the Person has met the applicable standard of conduct set forth in Section 14(B). Such determination will be made:

1. By a majority vote of a quorum consisting of directors who at the time of the vote are not named defendants or respondents in the Proceeding;

2. If such quorum cannot be obtained, by a majority vote of a committee of the Board of Directors, designated to act in the matter by a majority vote of all directors, consisting solely of two (2) or more directors who at the time of the vote are not named defendants or respondents in the Proceeding; or

3. By special legal counsel selected by the Board of Directors or a committee of the Board by a vote as set forth in (a) or (b) immediately foregoing, or, if such a quorum cannot be obtained and such a committee cannot be established by a majority vote of all Directors.

(D) Authorization of Payment

1. Authorization of indemnification and determination as to reasonableness of expenses will be made in the same manner as the determination that indemnification is permissible, except that if special legal counsel makes the latter determination, authorization of indemnification and determination as to reasonableness of expenses must be made:

   a. By a majority vote of a quorum consisting of directors who at the time of the vote are not named defendants or respondents in the Proceeding;

   b. If such a quorum cannot be obtained, by a majority vote of a committee of the Board of Directors, designated to act in the matter by a majority vote of all directors, consisting solely of two (2) or more directors who at the time of the vote are not named defendants or respondents in the Proceeding; or

   c. If such a committee cannot be established, by a majority vote of all directors.

2. Notwithstanding subsection 1 of this Section, payment of expenses actually and reasonably incurred by any Person as to whom indemnification is mandatory under Sections 14(A) or Section 14(B)1 of this Article will be deemed to be authorized provided that the standard of conduct necessary for indemnification under Section 1.2(a) of this Article is met.

(E) Advancement of Expenses

1. Expenses incurred in defending such Proceeding may be paid by the Club in advance of the final disposition of the Proceeding, without any of the authorizations or determinations specified in Sections 14(C) and 14(D) of this Article, upon receipt of a written affirmation by the Person of their good faith belief that he/she has met the standard of conduct necessary for indemnification under applicable law and a written undertaking by or on behalf of the Person to repay such amount unless it ultimately is determined that he/she is entitled to be indemnified by the Association as authorized in this Section. The written undertaking must be an unlimited general obligation of the Person but need not be secured. It may be accepted without reference to financial ability to make payment.

2. Provided that the written affirmation and undertaking described in Section 1.5(a) are received by the Association from a Person to be paid or reimbursed for fees incurred and as to whom indemnification is

Page 14 of 20

mandatory under Sections 14(A) or 14(B)1 of this Article, such payment or reimbursement will be deemed to be authorized.

(F)    Other Rights. The indemnification provided by these bylaws may not be deemed exclusive of any other rights to which a Person seeking indemnification may be entitled under the Articles of Incorporation, these bylaws, a resolution of directors, an agreement or otherwise both as to action in their Official Capacity and as to action in any Other Capacity, and will continue as to such Person after the termination of such capacity and will inure to the benefit of their heirs, executors and administrators; provided, however, that any provision for the Association to indemnify or to advance expenses to a director, whether contained in the Articles of Incorporation, these Bylaws, a resolution of directors, an agreement or otherwise, is valid only to the extent it is consistent with the Texas Business Organizations Code, as limited by the Articles of Incorporation, if such a limitation exists.

Section Fifteen. **Insurance.** The Club shall obtain the following: (a) Comprehensive General Liability Insurance; (b) Business Automobile Liability Insurance including Owned, Hired and Non-Owned Auto Liability with limits in amounts no less than those "Required as Underlying Limits of Liability" to purchase an Umbrella Liability Policy; (c) Workers Compensation/Employers Liability Insurance; with limits in amounts no less than those "Required as Underlying Limits of Liability" to purchase an Umbrella Liability Policy; (d) an Umbrella Liability Policy protecting the Club, the Board, Officers, Employees, committee members, volunteers and/or Agents of the Club, in a combined single limit amount of not less than five million dollars ($5,000,000); (e) Directors and Officers Liability/ Employment Practices Liability with a limit of not less than two million dollars ($2,000,000); (f) Crime/Employee Theft coverage with a minimum limit of five hundred thousand dollars ($500,000); and (g) Commercial Property insurance covering the Club's buildings, contents and common areas for the full insurable replacement value. The Board of Directors shall have the authority to procure whatever other forms or types of insurance as it deems advisable. If the forms or policies required by this paragraph are superseded, discontinued or unavailable, the Club shall have the right to provide other equivalent policies when feasible.

Each Homeowner shall be responsible for his own personal liability or loss for areas within the exclusive use and occupancy of such homeowner.

Section Sixteen. **Funding of Debt.** Payment of contracted debt shall take precedence in the use of Club revenues and in the budgeting of Club expenses. Appropriate debt service payments for any and all contracted debt shall be included in each annual or project budget. Any revenues designated or earmarked for use in capital projects and/or the servicing of debt for such projects shall be faithfully and continuously set aside for such use. Alternative, reliable revenues may be substituted for such designated or earmarked revenues, provided that such substitutions comply with the requirements of any contracts for debt. No budget action shall be taken which abrogates or fails to fulfill the requirements of a contract for debt.

## ARTICLE IX. DUES, FEES, AND ASSESSMENTS

Section One. **Dues.** Dues for the fiscal year shall be established by the Board of Directors and incorporated in the budget for a fiscal year. Any increase in dues over the previous year shall be discussed and explained to the members at the budget presentation. Dues shall not be changed within the fiscal year except by two-thirds (2/3) vote of the members of the Board of Directors. Dues shall be payable in advance on the first (1st) day of each consecutive month.

Section Two. **Fees.** Appropriate fees for usage of Club facilities and/or property shall be set and rigidly enforced, by direction of the Board of Directors.

Section Three. **Initiation Fees.** Initiation fees shall be established by the Board of Directors. These fees shall not be changed for one (1) year after adoption. The fees may be reviewed and appropriately increased or decreased for succeeding

years. The Board of Directors, by vote of two-thirds (2/3) of its members, may waive initiation fees in individual cases of inheritance or intra-family transfer of ownership of membership lots.

Section Four. **Suspension and Reinstatement of Club Privileges**. The month's billing to membership includes any membership approved assessment charges; any charges made within the Food and Beverage department, any charges made within the Golf Pro Shop department, any Club assessed fines; as well as those monthly charges per membership including dues and service fees for services such as fire protection and garbage collection.

(A) The monthly billing is due on the last day of the month for which it is billed. If this billing is not paid by the first (1st) day of the month following the month for which it was billed, the member's account is classified as being in arrears. The Club will send a courtesy notice to the member which will provide clarification as to the accountability of the member and the process which will ensue.

(B) The member shall have until the fifteenth (15th) of the month of this courtesy notice to satisfy the required payment. If this payment is not made, the member's account shall be classified as being in arrears and the "charging against the member's account" for both merchandise and services within the Food and Beverage department and the Golf Pro Shop department shall immediately be suspended.

(C) The use of Club common areas may still be utilized with any services and/or merchandise purchased requiring payment with the use of a personal credit card.

(D) When any member of the Club is in arrears in payment of dues, fees, assessments, charges, and fines for a period of thirty (30) days, Club membership shall, following due process as required by TRP, be suspended and a nonrefundable late fee established by the Board of Directors shall be added for each month that the account remains delinquent.

(E) Membership privileges are, but not limited to, the use of Club common areas: (1) golf course; (2) clubhouse; (3) Lodge; (4) Marina; (5) Community Building; (6) parks; (7) swimming pool; (9) beach; (10 tennis courts; (11) pickle ball courts; (12) and lakes. Membership privileges suspended under this section are reinstated on the first (1st) day of the calendar month following full payment of the delinquent amount.

(F) Payment of less than the full delinquent amount is not grounds for reinstatement of privileges.

Section Five. **Account in Default**. Should a member's account (which includes, but is not limited to, dues, fees, assessments, charges, and fines) remain in arrears after all other reasonable attempts to collect have failed, the Club shall place a lien upon the member's lot or lots, second only to tax liens and existing mortgages. A suit may then be filed by or on behalf of the Club to enforce foreclosure in any court of competent jurisdiction with venue in Smith County, Texas.

## ARTICLE X. RECORDS AND REPORTS

Section One. **Books and Records**. All records, books, and annual reports of the financial activity of the Club, including minutes of the meetings of the Board of Directors and of the membership, shall be kept at the principal office of the Club in accordance with statutory requirements.

Section Two. **Availability**. The Club shall, in accordance with the terms of the TRP 209.005, make the books and records of the association open and reasonably available to an owner of property in the Hide-A-Way Lake or Lake Hide-A-Way Subdivisions in Smith County, Texas, or a person designated in writing signed by an owner as the owner's agent, attorney, or certified public accountant.

Page **16** of **20**

## ARTICLE XI. AMENDMENTS TO BYLAWS

Section One. **Power of Members to Amend Bylaws**. The bylaws of the Club shall be amended, repealed, or added to, or new bylaws shall be adopted, by written vote of fifty percent (50%) plus one (1) of members casting votes on such amendment, repeal, addition, or adoption. The text of the proposed revision shall be made available for inspection at least twenty-five (25) days in advance of the date by which such votes are to be cast. The text shall be posted at the Club office and on the Club's website at least twenty-five (25) days in advance of the date by which such votes are to be cast.

Section Two. **Power of Directors to Amend Bylaws**. The Board of Directors may, by majority vote of its members, amend those bylaws relating to Board committees. The Board of Directors shall, by a majority vote, amend those bylaws mandated by law. The text of the proposed revision shall be made available for inspection at least twenty-five (25) days in advance of the meeting at which such amendment is to be considered. The text shall be posted at the Club office and on the Club's website at least twenty-five (25) days in advance of the meeting at which such amendment is to be considered.

## ARTICLE XII. ELECTIONS AND REFERENDA

Section One. **Election Committee**. The Board of Directors shall, as soon as practical after installation in office each year, but no later than thirty (30) days prior to any election or referendum, designate five (5) Club members to serve as an Election Committee, which shall conduct and supervise all elections and referenda. At the Committee's first meeting, it shall elect a chairman and a vice-chairman. The Committee shall receive and certify the filing of applications of all candidates for the Board of Directors, supervise preparation of ballots, receive and have sole custody of ballots, and tally and certify results of all such balloting to the Board of Directors, subject to Club bylaws. The committee shall also certify petitions and supervise the preparation of referendum ballots. The Committee, with the approval of the Board of Directors, shall adopt rules for conduct of elections consistent with these bylaws. No member of the election committee shall be an officer, director, or salaried employee of the Club.

Section Two. **Manner of Elections**. The Election Committee may elect to conduct elections and referenda by one of three methods: (a) Electronic voting as permitted by Texas state law for homeowners associations; (b) distribution of ballots by mail to all memberships, with return of the ballots by mail or by hand by a specified date; or (c) casting of ballots by memberships at a polling place on a specific date, with adequate provision for request and return of absentee ballots by the election date. All ballots other than electronic ballots shall require a signature of the voting member.

Section Three. **Tabulation of and access to ballots.** See the Club election handbook.

Section Four. **Election of Directors.** All directors shall be elected at large for three (3) year terms.

- (A) Any qualified member desiring to be elected as a director, shall file a notarized application to be listed as a candidate for one (1) of the specified four (4) positions to be filled annually before the established time of the closing of the administrative office on the second (2nd) Monday in May of each year.
- (B) The Election Committee shall determine the form of ballot and procedure for distributing, casting, and counting the ballots.
- (C) The election, or the deadline for return of ballots, shall take place no earlier than the second (2nd) Monday in June and no later than the third (3rd) Monday in June.
    1. In a contested election the four (4) candidates receiving the largest number of votes shall be declared elected. They shall be sworn in and take office at the end of the first regular meeting of the Board of Directors in July prior to the election of officers.
    2. If there are not more than four candidates, the four or fewer applicants shall be declared elected directors in accordance with TRP Section 209.0058 (c). They shall be sworn in and take office at the end of the first

Page 17 of 20

regular meeting of the Board of Directors in July prior to the election of officers and prior to the Board of Directors filling vacancies occurring due to fewer than four candidates.

3. If there are fewer than four candidates the Board of Directors shall fill uncontested board positions at the first regular meeting of the Board of Directors in July prior to the election of officers by the affirmative vote of a majority of the directors and they shall be declared elected. They shall be sworn in and take office prior to the election of officers.

(D) In the case of tie votes in a contested election, the Election Committee shall call and conduct appropriate runoff elections within four (4) weeks of the first ballot.

## Section Five. **Initiative**

Members in good standing who wish to present a request for action to the Board of Directors exercise the right of initiative in the following manner.

(A) Letter of Request. Members may submit a written and signed request to the Board of Directors, clearly and specifically setting forth the requested action and the reasons for same. If the Board of Directors does not, within forty-five (45) days, initiate an action to respond to the request or does not, within ninety (90) days, complete an action which addresses the request to the satisfaction of the requestor(s), the member(s) may initiate a referendum on the issue or request in the following manner.

(B) Initiative Petition.

1. Petition Requirements. A petition, signed by fifteen (15) percent of the members eligible to vote, may be submitted to the Board of Directors on any matters concerning the Club, and its interconnected organizations, with the exception of matters involving financial matters or personnel matters. The action requested shall be clearly and completely set forth on each page of the petition which contains signatures. Each signature on the petition shall be accompanied by the following legible information: (a) name printed; (b) lot number; (c) address; (d) and telephone number. Members eligible to cast both votes of a membership may sign twice. One (1) or more persons shall be designated as "sponsors" of the petition to exercise the responsibilities listed below.

2. Petition Verification. The petition shall be presented by the Board of Directors to the Election Committee, which shall, within thirty (30) days, verify the sufficiency of the petition by determining whether it represents at least fifteen (15) percent of the memberships qualified to vote.

3. Board Response. If the petition is found to be sufficient (representing at least fifteen (15) percent of the memberships eligible to vote), the Board of Directors shall have twenty (20) days in which to enact measures designed to fulfill the action requested by the petition.

4. Referendum. If, within thirty (30) days following the time allotted for a Board response, the petition sponsors advise the Board of Directors or the Board President that the Board of Directors has failed to satisfy the action requested, it shall be the duty of the Board of Directors to call for a binding referendum on the issue, to be held within forty-five (45) days. The form of the ballot shall be prepared by the Election Committee, shall call for a "yes" or "no" vote, and shall include the full and original text of the petition request. The approval of two-thirds (2/3) of the Club members voting shall be required for passage.

5. The requirements of this section only apply to referenda initiated by the membership through the petition process. If the proposition does not pass, the circumstances are as though an election was never held. A second initiative concerning the same requested action(s) is prohibited for one (1) calendar year after the completion of the election regarding the first initiative process.

## Section Six. **Referenda.**

Page 18 of 20

(A) The Board of Directors may call a binding referendum on any subject within its authority. The proposition to be submitted to referendum shall be drafted by the Bylaws and Rules Committee and must pass a majority vote of the Board of Directors before posting to the membership. Posting shall be done at least twenty-five (25) days prior to a final vote by the Board of Directors to submit the referendum to the members. Posting shall be given by the following methods: (1) posting at the office of the Club; (2) placing on the Club web site; (3) and by electronic email to an address provided by the member. If the Board approves the final version of the referendum proposition with a majority vote, the Election Committee shall prepare a ballot and conduct a vote of the membership. The approval of fifty (50) percent plus one (1) of the Club members voting is required for passage. If the proposition does not pass, the circumstances are as though an election was never held.

(B) The Board of Directors shall not take any of the following actions without the approval of fifty (50) percent plus one (1) of the Club members voting in a binding referendum:
1. Assessments of any kind. An assessment is defined as any levy of a specific amount, imposed on the membership for: (a) a specific project for a specific length of time; (b) or as a lump sum. This provision shall not apply to dues levied to meet the requirements of an annual operating budget or dues levied to meet the requirements of a court order or mandated by law.
2. Any action resulting in the expansion of the platted boundaries of the Club, any increase in the total number of lots, any increase in the total memberships available exceeding one thousand nine hundred forty-four (1,944), or any action which would otherwise materially dilute the interest of the membership in the assets of the Club.
3. The purchase, sale, or exchange of land or property rights owned by the Club of an appraised value in excess of one hundred thousand dollars ($100,000).
4. Any proposal for a capital improvement (including, but not limited to, new construction or refurbishment to facilities) with an estimated cost, provided by a competent contractor or by a licensed architect or engineer, in excess of three hundred thousand dollars ($300,000).
5. Overturn or modify any action passed through a referendum vote of the membership held pursuant to this article.
6. Amendments of bylaws relating to: (a) membership qualifications, rights, and privileges; (b) meetings of the board of directors and the general membership; (c) the board of directors (except Board committees and meeting procedures); (d) officers; (e) financial control; (f) dues, fees, and assessments; (g) bylaw amendments; (h) elections, initiative, and referenda; (i) miscellaneous provisions; (j) and protection of the Club's nonprofit status. Excepted from this provision are changes mandated by law, which shall be enacted by the Board of Directors.

## ARTICLE XIII. MISCELLANEOUS

Section One. **Corporate Seal**. The Board of Directors shall provide a corporate seal, which shall be in the form of a circle and shall have inscribed thereon the words "Corporate Seal of Hide-A-Way Lake Club, Inc."

Section Two. **Dissolution**. The Club may be dissolved by resolution, approved by at least two-thirds (2/3) of the members entitled to vote, at a meeting called specifically for that purpose. At least ninety (90) days notice of such meeting shall be given to the members. Notice shall be given by the following methods: (a) written or printed notice transmitted to each membership eligible to vote by United States mail at the most current address according to the Club records; (b) prominently published notice in a newspaper of general circulation in the community; (c) by electronic email to an address provided by the member; (d) and posting at the Club office. Members may vote in person, by mail, or by written proxy given to another member and effective only for the special meeting to consider dissolution. Authority to dissolve, liquidate or conclude the affairs of the Club may be delegated by resolution approved by at least two-thirds (2/3) of the members entitled to vote. Such authority may be given in general or specific terms to the Board of Directors for exercise in accordance with the relative provisions of the Texas Non-Profit Corporation Act.

Section Three. **Effective Date**. All additions or changes to these bylaws become effective thirty (30) days after the requisite affirmative vote by either the Club Board of Directors or the Club membership occurs.

Section Four. **Proceedings**. These bylaws shall have prospective effect only and shall not alter or modify to any extent any existing legal obligations of the Club and shall not impair any binding contracts heretofore legally entered into by the Club.

Section Five. **Separability**. If a court of competent jurisdiction holds any section or article of these bylaws invalid, such holding shall not affect the remainder of these bylaws nor the context in which such section or article may appear, except to the extent that an article may be inseparably connected in meaning and effect with the section and article declared invalid.

## ARTICLE XIV. PROTECTION OF NON-PROFIT STATUS

The Club shall do no act which constitutes a basis for denial of tax exemption under applicable laws.
In particular:
(A) The Club shall not:
    1. Lend any part of its income or corpus without the receipt of adequate security and a reasonable rate of interest; or
    2. Pay any compensation, in excess of a reasonable allowance for salaries or other compensation for personal services actually rendered; or
    3. Make any part of its services available on a preferential basis; or
    4. Make any substantial purchase of securities or any other property, for more than adequate consideration in money or money's worth; or
    5. Sell any substantial part of its securities or other property, for less than an adequate consideration in money or money's worth; or
    6. Engage in any other transaction which results in a substantial diversion of its income or corpus to a person who has made a substantial contribution to the Club; a member of the family of such person; or a corporation controlled by such person.

(B) The Club shall not accumulate out of income amounts which are:
    1. Unreasonable in amount or duration in order to carry out the purpose or function constituting the basis for tax exemption of the Club; or
    2. Used to a substantial degree for purposes or functions other than those constituting the basis for tax exemption; or
    3. Invested in such manner as to jeopardize the carrying out of the purpose or function constituting the basis for tax exemption.

_____
Hide-A-Way Lake Club, Inc.  Board Officer

_____
Hide-A-Way Lake Club, Inc.  Board Officer

State of Texas
County of Smith

Before be, a notary public, ont his day personally appeared _Brett Lindig_ & _Grenville Lewis, II_ known to me to be the person whose name(s) is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are true and correct.

JOAN A HAYES
Notary Public
STATE OF TEXAS
ID#1021356-5
My Comm. Exp. June 26, 2023

_____
Notary Public
Commission Expires: _06/26/2023_

Page **20** of 20

# EXHIBIT 3



**Smith County**
**Karen Phillips**
Smith County Clerk

*VG-151-2024-202401013250*

**Document Number:** 202401013250

Real Property Recordings
RESTRICTION

Recorded On: May 09, 2024 10:11 AM

Number of Pages: 71

Billable Pages: 70

**" Examined and Charged as Follows: "**

Total Recording: $301.00

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**

| | |
|---|---|
| Document Number: | 202401013250 |
| Receipt Number: | 20240509000013 |
| Recorded Date/Time: | May 09, 2024 10:11 AM |
| User: | Alma J |



**STATE OF TEXAS**
**Smith County**
I hereby certify that this Instrument was filed in the File Number sequence on the date/time
printed hereon, and was duly recorded in the Official Records of Smith County, Texas

Karen Phillips
Smith County Clerk
Smith County, TX

Karen Phillips

_____
Hide-A-Way Lake Club, Inc. Board President
Jerry D. Mullins

_____
Hide-A-Way Lake Club, Inc. Treasurer
Grenville Lewis IV

State of Texas
County of Smith

Before me, a notary public, on this day _May 8, 2024_ personally appeared
_Grenville Lewis IV_ and _Jerry D. Mullins_ known to me
to be the person whose name(s) is subscribed to the foregoing document and, being by me first
duly sworn, declared that the statements therein contained are true and correct.

(Seal)

JOAN A HAYES
Notary Public
STATE OF TEXAS
ID#1021356-5
My Comm. Exp. June 26, 2027

_____
Notary Public

70

# EXHIBIT 4

VOL 5111 PAGE 320

## AFFIDAVIT AUTHENTICATING
## ARTICLES OF MERGER OF DOMESTIC CORPORATIONS
### (HIDE-A-WAY LAKE HOME OWNERS, INC. AND HIDE-A-WAY LAKE CLUB, INC.)

**STATE OF TEXAS**        §
**COUNTY OF SMITH**       §

Before me the undersigned authority on this day personally appeared Sue C. Hughes, President of Hide-A-Way Lake Club, Inc. who being on her oath duly sworn stated the following:

1.    My name is Sue C. Hughes. I am the President of Hide-A-Way Lake Club, Inc. I am over eighteen (18) years of age and I have personal knowledge of the facts set forth in this Affidavit.

2.    Attached hereto as Exhibit "A" is a true and correct copy of the Articles of Merger of Domestic Corporations relating to Hide-A-Way Lake Home Owners, Inc. and Hide-A-Way Lake Club, Inc. filed with the Secretary of the State of Texas on December 29, 1999. Also attached hereto as Exhibit "B" is a true and correct copy of the Certificate of Merger issued by the Secretary of the State of Texas effective January 1, 2000.

75-1990476

_____
SUE C. HUGHES

SUBSCRIBED AND SWORN TO BEFORE ME by Sue C. Hughes on the ____ day of January, 2000, to certify which witness my hand and seal of office.

SUZANNE TAYLOR
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-28-2002

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

Filed for Record in:
SMITH COUNTY, TEXAS
JUDY CARNES, COUNTY CLERK

On  Jan 12 2000
At  4:31pm

Deputy - Alexa Murray

## ACKNOWLEDGMENT

STATE OF TEXAS      §
COUNTY OF SMITH     §

    This instrument was acknowledged before me on the 7th day of January, 2000, by Sue C. Huhges, as President for Hide-A-Way Lake Club, Inc., a Texas non-profit corporation, on behalf of said corporation.



SUZANNE TAYLOR
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-28-2002

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

**AFTER RECORDING RETURN TO:**
Scott A. Ritcheson
Ritcheson, Dollahite & Lauffer, P.C.
3301 Golden Road, Suite 400
Tyler, Texas 75701

hideaway\merger\Aff.AuthArticles.wpd

**AFFIDAVIT AUTHENTICATING ARTICLES OF MERGER: PAGE 2**

VOL 5111 PAGE 322

In the Office of the
Secretary of State of Texas

DEC 2 9 1999

## ARTICLES OF MERGER OF DOMESTIC CORPORATIONS

The undersigned corporations, Hide-A-Way Lake Home Owners, Inc. and Hide-A-Way Lake
Club, Inc., adopt these Articles of Merger.

Corporations Section

### ARTICLE I

### PLAN OF MERGER

1.01    Attached hereto as Exhibit "A" and incorporated herein by reference is the Plan of
Merger which was adopted by each of the undersigned corporations. The Plan of Merger includes
the following:

    a.    The names of the corporations proposing to merge and the states under whose laws
they are organized are:

| Name of Corporation | State of Incorporation |
|---|---|
| Hide-A-Way Lake Home Owners, Inc. | Texas |
| Hide-A-Way Lake Club, Inc. | Texas |

    b.    The name of the surviving corporation is Hide-A-Way Lake Home Owners, Inc.

    c.    The terms of the proposed merger are specifically set forth in the attached Plan of
Merger.

    d.    The surviving corporation's articles of incorporation will be amended to change the
name of the surviving corporation from Hide-A-Way Lake Home Owners, Inc. to
Hide-A-Way Lake Club, Inc.

### ARTICLE II

### PROCEDURE OF ADOPTION

2.01    The Plan of Merger was adopted at a members' referendum meeting of Hide-A-Way
Lake Home Owners, Inc. held on ___June 10, 1999___ at which a quorum was present either
in person, by proxy or by ballot. The Plan received at least 2/3 of the votes of those members who
were present or represented by proxy or by ballot. There is only one class of members of Hide-A-
Way Lake Home Owners, Inc.

2.02    The Plan of a Merger was adopted at a members' referendum meeting of Hide-A-Way
Lake Club, Inc. held on ___June 10, 1999___ at which a quorum was present either in person,
by proxy or by ballot. The Plan received at least 2/3 of the votes of those members who were present

## ARTICLES OF MERGER OF DOMESTIC CORPORATIONS; PAGE 1

or represented by person, by proxy or by ballot. There is only one class of members of Hide-A-Way Lake Club, Inc.

## ARTICLE III

### SURVIVING CORPORATION

3.01    The post office address of the surviving corporation, Hide-A-Way Lake Home Owners, Inc., is 302 Hide-A-Way Lane Central, Suite 100, Lindale, Texas 75771.

## ARTICLE IV

### EFFECTIVE DATE OF MERGER

4.01    The effective date of the merger is January 1, 2000.

We, the undersigned officer of Hide-A-Way Lake Home Owners, Inc. and Hide-A-Way Lake Club, Inc., Texas non-profit corporations involved in this merger, hereby execute these Articles of Merger on behalf of the corporations on this the ___2___ day of November, 1999.

HIDE-A-WAY LAKE HOME OWNERS, INC.,
a Texas non-profit corporation

BY: _Sue C. Hughes_
NAME: Sue C. Hughes
TITLE: PRESIDENT

ATTEST:

BY: _Edward D. Dowd_
NAME: Edward D. Dowd
TITLE: Secretary

## ARTICLES OF MERGER OF DOMESTIC CORPORATIONS; PAGE 2

VOL 5111 PAGE 324

HIDE-A-WAY LAKE CLUB, INC.,
a Texas non-profit corporation

BY: _____
NAME:    Sue   C.   Hughes
TITLE: PRESIDENT


ATTEST:

BY: _____
NAME:   Edward D. Dowd
TITLE: Secretary

hideaway\merger\ArtofMerger.wpd

ARTICLES OF MERGER OF DOMESTIC CORPORATIONS; PAGE 3

EXHIBIT "A"

## PLAN OF MERGER

THIS PLAN OF MERGER ("Plan") is entered into on __April 19, 1999__ by HIDE-A-WAY LAKE CLUB, INC., a Texas non-profit corporation, ("**Acquired Corporation**"), and HIDE-A-WAY LAKE HOME OWNERS, INC., a Texas non-profit corporation ("**Surviving Corporation**").

### ARTICLE 1

### PLAN OF MERGER

**Adoption of Plan**

1.01. This plan of merger between Acquired Corporation and Surviving Corporation is made under the provisions of Article 5.01 et seq. of the Texas Non-Profit Corporation Act and is adopted as follows:

(a) On the effective date of the merger as set forth in Article 1.02, Acquired Corporation will be merged into Surviving Corporation, to do business and be governed by the laws of Texas.

(b) Surviving Corporation's name will be: Hide-A-Way Lake Home Owners, Inc. although the surviving corporation intends to, immediately thereafter, change its name to Hide-A-Way Lake Club, Inc. The articles of incorporation of the Surviving Corporation shall be amended to reflect the change in name.

(c) When this Plan becomes effective, the existence of Acquired Corporation as a distinct entity will cease. At that time, Surviving Corporation will succeed to all the rights, title, and interests to all property owned by Acquired Corporation, without reversion or impairment, without any further act, and without any transfer or assignment having occurred, but subject to any existing liens or other encumbrances on the property. Surviving Corporation also will be subject to all the debts and obligations of Acquired Corporation as the primary obligor, except as otherwise provided by law or contract, and only Surviving Corporation will be liable for the debt or obligation. Surviving Corporation succeeds to the interest of and is thereby assigned and transferred all rights, privileges and liens arising under the terms of that certain Declaration of Covenants, Conditions and Restrictions (the "**Restrictions**") concerning certain real property in Smith County, Texas and recorded in Volume 1249, Page 310 and amended in Volume 2807, Page 671, Volume 2814, Page 737 and Volume 3303, Page 156 of the Land Records of Smith County, Texas.

(d) Surviving Corporation will carry on business with the assets of both corporations.

(e) The members of Acquired Corporation will surrender all of their memberships in the manner set forth in this Plan and continue as members of the Acquiring Corporation. Members of the Acquired Corporation are also members of the Surviving Corporation. In the event, however, that any member of the Acquired Corporation is not currently a member of the Surviving Corporation, the merger shall automatically make such a person a member of Surviving Corporation

without further application, process of fee.

**Effective Date**

 1.02. The effective date of the merger ("**Effective Date**"), will be <u>January 1, 2000</u>.

## ARTICLE 2

## REPRESENTATIONS AND WARRANTIES

**Acquired Corporation**

 2.01. As a material inducement to Surviving Corporation to execute this Plan and perform its obligations under this Plan, Acquired Corporation represents and warrants to Surviving Corporation as follows:

 (a) Acquired Corporation is a non-profit corporation duly organized, validly existing, and in good standing under the laws of Texas, with corporate power and authority to own, lease, and operate property and carry on its business as it is now being conducted. A copy of the articles of incorporation and the bylaws of Acquired Corporation, including all amendments effective as of the date of this Plan, have been delivered to Surviving Corporation, and are complete and correct.

 (b) Acquired Corporation has furnished Surviving Corporation with Acquired Corporation's audited balance sheet as of <u>December 31, 1998</u>, and the related audited statement of income for the twelve (12) months ending <u>December 31, 1998</u>. Acquired Corporation has also furnished its interim unaudited balance sheet ("**Balance Sheet**") as of <u>September 30, 1999</u> and the related unaudited statement of income for the <u>nine (9)</u> -month period ending on the Balance Sheet Date. The financial statements referred to in this subparagraph (b):

 (i) Are in accordance with the books and records of Acquired Corporation;

 (ii) Fairly represent the financial condition of the Acquired Corporation as of the described dates and the results of its operations as of and for the periods specified, all prepared in accordance with generally accepted accounting principles, applied on a basis consistent with prior accounting periods; and

 (iii) Contain and reflect, in accordance with generally accepted accounting principles consistently applied, (A) reserves for all liabilities, and costs in excess of expected receipts and (B) all discounts and refunds in respect of service and products already rendered or sold that are reasonably anticipated and based on events or circumstances in existence or likely to occur in the future with respect to any of Acquired Corporation's contracts or commitments.

Specifically, but not by way of limitation, the Balance Sheet discloses in accordance with generally

**PLAN OF MERGER; PAGE 2**

accepted accounting principles all of the debts, liabilities, and obligations of any nature, whether absolute, accrued, or contingent, of Acquired Corporation at the Balance Sheet Date, including appropriate reserves for all taxes due at such date but not yet payable.

(c) All required federal, state, and local tax returns of Acquired Corporation have been accurately prepared and timely filed, and Acquired Corporation has paid all federal, state, and local taxes required to be paid with respect to the periods covered by such returns. Acquired Corporation has not been delinquent in the payment of any tax, assessment, or governmental charge. Acquired Corporation has never had any tax deficiency proposed or assessed against it.

(d) Since the Balance Sheet Date, there has not been any material adverse change in the financial condition, business, and assets or other properties of the Acquired Corporation that alters or impairs its ability to conduct its business.

(e) To its knowledge, no actions, suits, or other legal proceedings are pending or threatened against Acquired Corporation before or by any federal, state, or municipal court, department, board, bureau, or agency except actions seeking $ 5,000.00            damages or less and except those listed below:

Surviving Corporation

2.02. As a material inducement to Acquired Corporation to execute and perform its obligations under this plan, Surviving Corporation represents and warrants to Acquired Corporation as follows:

(a) Surviving Corporation is a non-profit corporation duly organized, validly existing, and in good standing under the laws of Texas, with corporate power and authority to own property and carry on its business as it is now being conducted.

## ARTICLE 3

## TERMS, CONDITIONS, AND PROCEDURES PRIOR TO EFFECTIVE DATE

### Submission to Members and Filing

3.01. This Plan will be submitted for approval separately to the members of the merging parties in the manner provided by the laws of Texas and the parties' respective bylaws and articles of incorporation.

PLAN OF MERGER; PAGE 3

## Conditions Precedent to Obligations of Acquired Corporation

3.02. Except as expressly waived in writing by Acquired Corporation, all of the obligations of Acquired Corporation are subject to fulfillment of each of the following conditions on or before the Effective Date:

(a)    The representations and warranties made by Surviving Corporation to Acquired Corporation in Article 2 of this Plan will be deemed to have been repeated on the Effective Date and will on that date be true and correct in all material respects. If Surviving Corporation discovers any material error, misstatement, or omission in those representations and warranties on or before the Effective Date, it must report that discovery immediately to Acquired Corporation and must either correct the error, misstatement, or omission or obtain a written waiver from Acquired Corporation.

(b)    Approval of this Plan of Merger by the members of each corporation in accordance with the parties respective bylaws and the Texas Non-Profit Corporation Act;

(c)    Surviving Corporation must have performed and complied with all applicable covenants and conditions required by this Plan on or before the Effective Date.

(d)    Surviving Corporation must have performed and complied with all applicable agreements and conditions in this Plan prior to or on the Effective Date.

(e)    Surviving Corporation must have delivered to the Acquired Corporation a certification dated the Effective Date, executed in its corporate name by its president or any vice president, certifying the satisfaction of the conditions specified in subparagraphs (a) and (b) of this paragraph 3.02.

(f)    No action or proceeding by any governmental body or agency must have been threatened, asserted, or instituted to restrain or prohibit the carrying out of the transactions contemplated by this Plan.

(g)    All corporate and other proceedings and actions taken in connection with the transactions contemplated and all certificates, opinions, agreements, instruments, and documents must be satisfactory in form and substance to Acquired Corporation.

(h)    At the Effective Date, Surviving Corporation must have written authorization, or other approval in a form satisfactory to Surviving Corporation, that the contracts, leases, promissory notes and other outstanding obligations of the Acquired Corporation may be assumed by the Surviving Corporation including, but not limited to the following such contracts, leases, promissory notes and other outstanding agreements:

(i)    That certain promissory note dated January 22, 1996 in original principal amount

PLAN OF MERGER; PAGE 4

of $ 400,000 executed by Acquired Corporation and payable to the order of Nations Bank of Texas;

(ii)   That certain agreement between Hide-A-Way Lake Club, Inc., Hide-A-Way Lake Home Owners, Inc., Hide-A-Way Lake, Inc., Lake Hide-A-Way, Inc., Crystal Systems Texas, Inc. and James W. Fair dated October 10, 1994.

(i) The Surviving Corporation has satisfied itself, in the exercise of its sole discretion and judgment that the merger qualifies as a tax-free merger for federal income tax purposes.

## Conditions Precedent to Obligations of Surviving Corporation

3.03.   Except as waived in writing by Surviving Corporation, all of the obligations of Surviving Corporation under this Plan are subject to fulfillment of each of the following conditions on or before the Effective Date:

(a) The representations and warranties of Acquired Corporation in this Plan and in any document delivered under this Plan are deemed to have been repeated in full on the Effective Date and must on that date be true and correct in all material respects. If Acquired Corporation discovers any material error, misstatement, or omission in those representations and warranties on or before the Effective Date, it must report that discovery immediately to Surviving Corporation and must either correct the error, misstatement, or omission or obtain a written waiver from Surviving Corporation.

(b) Approval of this Plan of Merger by the members of each corporation in accordance with the parties respective bylaws and the Texas Non-Profit Corporation Act;

(c) Acquired Corporation must have performed and complied with all applicable covenants and conditions in this Plan on or before the Effective Date.

(d) Acquired Corporation must have delivered to Surviving Corporation a certification, dated the Effective Date, executed in its corporate name by the president and secretary of Acquired Corporation and certifying the satisfaction of the conditions specified in subparagraphs (a) and (b) of this paragraph 3.03.

(e) No action or proceeding by any governmental body or agency will have been threatened, asserted, or instituted to restrain or prohibit the completion of the transactions contemplated by this Plan.

## Interim Conduct of Business; Limitations

PLAN OF MERGER; PAGE 5

3.04. (a) Except as limited by this paragraph 3.04, pending consummation of the merger, each of the parties to the merger will carry on its business in substantially the same manner as prior to the date of this Plan and will use its best efforts to maintain its business organization intact, to retain its present employees, and to maintain its good will in relationships with suppliers, members and others transacting business with the entity.

(b)  Except with the prior consent in writing of Surviving Corporation, pending consummation of the merger, Acquired Corporation will not:

(i) Create or issue any indebtedness for borrowed money.

(ii) Enter into any transaction other than those involved in carrying on its ordinary course of business.

### Expenses

3.05. (a) If the merger set forth in this Plan is consummated, Surviving Corporation will pay all costs and expenses of the merger.

(b) If the merger set forth in this Plan is not consummated, each party to this Plan will pay its own costs and expenses incident to the contemplated merger.

### ARTICLE 4

### MANNER AND BASIS OF CONVERTING MEMBERSHIPS

### Manner of Converting Memberships

4.01. The members of Acquired Corporation will surrender their memberships as of the Effective Date, and be members of Surviving Corporation without any fee, application or other process.

### ARTICLE 5

### DIRECTORS AND OFFICERS

### Directors and Officers of Surviving Corporation

5.01. The present board of directors of Surviving Corporation will continue to serve as its board of directors until the next annual meeting or until their successors have been elected and qualified.

5.02. All persons who on the Effective Date are executive or administrative officers of

---

PLAN OF MERGER; PAGE 6

Surviving Corporation will remain as officers of Surviving Corporation until its board of directors determines otherwise. Surviving Corporation's board of directors may elect or appoint additional officers as it deems necessary.

## ARTICLE 6

## ARTICLES OF INCORPORATION AND BYLAWS

### Articles of Incorporation of Surviving Corporation

6.01. (a) Article 1 of Surviving Corporation's articles of incorporation, is amended to read as follows: The name of the Corporation shall be HIDE-A-WAY LAKE CLUB, INC.

(b) Except as amended in subsection (a), Surviving Corporation's articles of incorporation will continue in full force until further amended as provided in the articles or as provided by law.

### Surviving Corporation's Bylaws

6.02. Surviving Corporation's bylaws, as existing on the Effective Date, will continue in full force until altered, amended, or repealed as provided in the bylaws or as provided by law.

## ARTICLE 7

## SURVIVAL OF WARRANTIES AND

## INDEMNIFICATION

### Nature and Survival of Representations and Warranties

7.01. All statements contained in any memorandum, certificate, letter, document, or other instrument delivered by or on behalf of Acquired Corporation, Surviving Corporation, or the members of any party to the plan of merger will be deemed representations and warranties made by such parties, respectively, to each other under this Plan. The representations and warranties of the parties and the members will survive for a period of three years following the Effective Date and will survive despite any inspections, examinations, or audits made on behalf of the parties and the members.

## ARTICLE 8

## ABANDONMENT

### Circumstances Allowing Termination and Abandonment

---

**PLAN OF MERGER; PAGE 7**

8.01. This Plan may be terminated and the merger may be abandoned at any time before the Effective Date, even after the articles of merger have been filed with the Texas secretary of state.

(a) The board of directors of any party to the merger may abandon this Plan before the articles of merger are filed with the Texas secretary of state.

(b) To abandon this Plan after the articles of merger have been filed with the Texas secretary of state, an officer or authorized representative must file a statement with the secretary of state executed on behalf of each party to the merger declaring that the Plan has been abandoned in accordance with the terms of this Plan and Article 5.03, Section B of the Texas Non-Profit Corporation Act. The statement must be filed before the Effective Date.

(c) Regardless of whether the articles of merger have been filed with the Texas secretary of state, this Plan may be abandoned under the following conditions:

(i) The number of members dissenting from the merger is so large that the merger is deemed inadvisable or undesirable in the opinion of the board of directors of either party to the merger.

(ii) Any material litigation or proceeding has been instituted or threatened against another party to the merger or any of its assets, that renders the merger inadvisable or undesirable in the opinion of the board of directors of either party to the merger.

(iii) Any legislation or administrative regulation or rule has been enacted that, in the opinion of the board of directors of either party to the merger, renders the merger inadvisable or undesirable.

(iv) After the date of execution of this Plan there has been, in the opinion of the board of directors of either party to the merger, any materially adverse change in the business or condition, financial or otherwise, of another party to the merger.

(c) At the election of Surviving Corporation's board of directors if, without the prior consent in writing of Surviving Corporation, Acquired Corporation has:

(i) Created or issued any indebtedness for borrowed money.

(ii) Entered into any transaction other than those involved in the ordinary course of business.

Notice of and Liability on Termination of Plan

8.02. If an election is made to abandon this Plan under paragraph 8.01:

(a) An officer of authorized representative of the party whose board of directors has made the election must give immediate written notice of the election to the other party to the merger.

PLAN OF MERGER; PAGE 8

(b) When notice has been properly effected as provided in subparagraph (a), and when an appropriate statement has been filed with the secretary of state as provided in section 8.01(b), this Plan will terminate and the proposed merger will be abandoned. Except for payment of its own costs and expenses incident to this Plan, there will be no liability on the part of either party to the merger as a result of the abandonment.

## ARTICLE 9

### ENFORCEMENT AND INTERPRETATION

#### Further Assurances and Assignments

9.01. Acquired Corporation agrees that when requested by Surviving Corporation or by its successors or assigns, Acquired Corporation will execute and deliver or cause to be executed and delivered all deeds and other instruments necessary to consummate the transaction that is the subject of this Plan. Acquired Corporation also agrees to take or cause to be taken any further actions, assignments, or assurances that are necessary to vest, perfect, and conform title of Surviving Corporation to all the property, rights, privileges, powers, and franchises referred to in Article 1 of this Plan, and otherwise necessary to carry out the intent and purposes of this Plan.

#### Notices

9.02. Any notice or other communication required or permitted by this Plan, with the exception of the filing of a statement of abandonment under paragraph 8.01(b), will be deemed to be given when deposited in the United States mails for transmittal by certified or registered mail, postage prepaid, or when deposited with a public telegraph company for transmittal, charges prepaid, addressed:

(a) In the case of Acquired Corporation, to: Hide-A-Way Lake Club, Inc., Attention: Bob Ammons, President, 302 Hide-A-Way Lane Central, Suite 100, Lindale, Texas 75771 or to any other person or address that Acquired Corporation may designate in writing on proper notice to Surviving Corporation.

(b) In the case of Surviving Corporation, to: Hide-A-Way Lake Home Owners, Inc., Attention: Bob Ammons, President, 302 Hide-A-Way Lane Central, Suite 100, Lindale, Texas 75771 or to any other person or address that Surviving Corporation may designate in writing on proper notice to Acquired Corporation.

#### Entire Agreement and Counterparts

9.03. This instrument and any exhibits attached to and incorporated into the instrument contain the entire agreement between the parties with respect to the transaction contemplated by this Plan. It may be executed in any number of counterparts; however, all counterparts taken together will

**PLAN OF MERGER; PAGE 9**

constitute one original.

**Controlling Law**

9.04. The validity, interpretation, and performance of this Plan is controlled by and construed under the laws of Texas, the state in which this Plan is being executed.

Dated: April 27, , 1999.

HIDE-A-WAY LAKE CLUB, INC.,
a Texas non-profit corporation

BY: _R.C. Ammons_
NAME: _R. C, AMMONS_
TITLE: _PRESIDENT_

ATTEST:

BY: _W.R. Adam G._
NAME: _W. Roy Adams, Jr._
TITLE: _TREASURER_

HIDE-A-WAY LAKE HOME OWNERS, INC.,
a Texas non-profit corporation

BY: _R.C. Ammons_
NAME: _R. C. Ammons_
TITLE: _PRESIDENT_

ATTEST:

BY: _W.R. Adam J._
NAME: _W. Roy Adams, Jr._
TITLE: _TREASURER_

Hideaway\Merger\Plan.Merger.wpd

PLAN OF MERGER; PAGE 10



# The State of Texas

## SECRETARY OF STATE

### CERTIFICATE OF MERGER

The undersigned, as Secretary of State of Texas, hereby certifies that the attached Articles of Merger of

HIDE-A-WAY LAKE CLUB, INC.
A Texas non-profit corporation
with
HIDE-A-WAY LAKE HOME OWNERS, INC.
A Texas non-profit corporation which changed its name to
HIDE-A-WAY LAKE CLUB, INC.

have been received in this office and are found to conform to law. ACCORDINGLY, the undersigned, as Secretary of State, and by virtue of the authority vested in the Secretary by law, hereby issues this Certificate of Merger.

Filed          December 29, 1999

Effective      January 1, 2000



STATE OF TEXAS     COUNTY OF SMITH
I hereby certify that this instrument was filed
on the date and time stamped hereon by me
and was duly recorded in the Official Public
records of Smith County, Texas.

JAN 1 2 2000

JUDY CARNES
COUNTY CLERK, SMITH County, Texas

Elton Bomer
*Secretary of State*

# EXHIBIT 5

VOL 5111 PAGE 322

In the Office of the
Secretary of State of Texas

DEC 2 9 1999

Corporations Section

## ARTICLES OF MERGER OF DOMESTIC CORPORATIONS

The undersigned corporations, Hide-A-Way Lake Home Owners, Inc. and Hide-A-Way Lake Club, Inc., adopt these Articles of Merger.

### ARTICLE I

### PLAN OF MERGER

1.01    Attached hereto as Exhibit "A" and incorporated herein by reference is the Plan of Merger which was adopted by each of the undersigned corporations. The Plan of Merger includes the following:

a.    The names of the corporations proposing to merge and the states under whose laws they are organized are:

| Name of Corporation | State of Incorporation |
| --- | --- |
| Hide-A-Way Lake Home Owners, Inc. | Texas |
| Hide-A-Way Lake Club, Inc. | Texas |

b.    The name of the surviving corporation is Hide-A-Way Lake Home Owners, Inc.

c.    The terms of the proposed merger are specifically set forth in the attached Plan of Merger.

d.    The surviving corporation's articles of incorporation will be amended to change the name of the surviving corporation from Hide-A-Way Lake Home Owners, Inc. to Hide-A-Way Lake Club, Inc.

### ARTICLE II

### PROCEDURE OF ADOPTION

2.01    The Plan of Merger was adopted at a members' referendum meeting of Hide-A-Way Lake Home Owners, Inc. held on ___June 10, 1999___ at which a quorum was present either in person, by proxy or by ballot. The Plan received at least 2/3 of the votes of those members who were present or represented by proxy or by ballot. There is only one class of members of Hide-A-Way Lake Home Owners, Inc.

2.02    The Plan of a Merger was adopted at a members' referendum meeting of Hide-A-Way Lake Club, Inc. held on ___June 10, 1999___ at which a quorum was present either in person, by proxy or by ballot. The Plan received at least 2/3 of the votes of those members who were present

## ARTICLES OF MERGER OF DOMESTIC CORPORATIONS; PAGE 1

VOL 5111 PAGE 323

or represented by person, by proxy or by ballot. There is only one class of members of Hide-A-Way Lake Club, Inc.

## ARTICLE III

### SURVIVING CORPORATION

3.01    The post office address of the surviving corporation, Hide-A-Way Lake Home Owners, Inc., is 302 Hide-A-Way Lane Central, Suite 100, Lindale, Texas 75771.

## ARTICLE IV

### EFFECTIVE DATE OF MERGER

4.01    The effective date of the merger is January 1, 2000.

We, the undersigned officer of Hide-A-Way Lake Home Owners, Inc. and Hide-A-Way Lake Club, Inc., Texas non-profit corporations involved in this merger, hereby execute these Articles of Merger on behalf of the corporations on this the ___2___ day of November, 1999.

HIDE-A-WAY LAKE HOME OWNERS, INC.,
a Texas non-profit corporation

BY: _Sue C. Hughes_
NAME: Sue C. Hughes
TITLE: PRESIDENT

ATTEST:

BY: _Edward D. Dowd_
NAME: Edward D. Dowd
TITLE: Secretary

**ARTICLES OF MERGER OF DOMESTIC CORPORATIONS; PAGE 2**

VOL 5111 PAGE 324

HIDE-A-WAY LAKE CLUB, INC.,
a Texas non-profit corporation

BY: _Sue C. Hughes_____

NAME: Sue   C. Hughes

TITLE: PRESIDENT


ATTEST:

BY: _Edward D. Dowd_____

NAME: Edward D. Dowd

TITLE: Secretary


hideaway\merger\ArtofMerger.wpd


ARTICLES OF MERGER OF DOMESTIC CORPORATIONS; PAGE 3

EXHIBIT "A"

## PLAN OF MERGER

THIS PLAN OF MERGER ("Plan") is entered into on __April 19, 1999__ by HIDE-A-WAY LAKE CLUB, INC., a Texas non-profit corporation, ("**Acquired Corporation**"), and HIDE-A-WAY LAKE HOME OWNERS, INC., a Texas non-profit corporation ("**Surviving Corporation**").

## ARTICLE 1

### PLAN OF MERGER

**Adoption of Plan**

1.01. This plan of merger between Acquired Corporation and Surviving Corporation is made under the provisions of Article 5.01 et seq. of the Texas Non-Profit Corporation Act and is adopted as follows:

(a) On the effective date of the merger as set forth in Article 1.02, Acquired Corporation will be merged into Surviving Corporation, to do business and be governed by the laws of Texas.

(b) Surviving Corporation's name will be: Hide-A-Way Lake Home Owners, Inc. although the surviving corporation intends to, immediately thereafter, change its name to Hide-A-Way Lake Club, Inc. The articles of incorporation of the Surviving Corporation shall be amended to reflect the change in name.

(c) When this Plan becomes effective, the existence of Acquired Corporation as a distinct entity will cease. At that time, Surviving Corporation will succeed to all the rights, title, and interests to all property owned by Acquired Corporation, without reversion or impairment, without any further act, and without any transfer or assignment having occurred, but subject to any existing liens or other encumbrances on the property. Surviving Corporation also will be subject to all the debts and obligations of Acquired Corporation as the primary obligor, except as otherwise provided by law or contract, and only Surviving Corporation will be liable for the debt or obligation. Surviving Corporation succeeds to the interest of and is thereby assigned and transferred all rights, privileges and liens arising under the terms of that certain Declaration of Covenants, Conditions and Restrictions (the "**Restrictions**") concerning certain real property in Smith County, Texas and recorded in Volume 1249, Page 310 and amended in Volume 2807, Page 671, Volume 2814, Page 737 and Volume 3303, Page 156 of the Land Records of Smith County, Texas.

(d) Surviving Corporation will carry on business with the assets of both corporations.

(e) The members of Acquired Corporation will surrender all of their memberships in the manner set forth in this Plan and continue as members of the Acquiring Corporation. Members of the Acquired Corporation are also members of the Surviving Corporation. In the event, however, that any member of the Acquired Corporation is not currently a member of the Surviving Corporation, the merger shall automatically make such a person a member of Surviving Corporation

without further application, process of fee.

**Effective Date**

1.02. The effective date of the merger ("Effective Date"), will be <u>January 1, 2000</u>.

## ARTICLE 2

### REPRESENTATIONS AND WARRANTIES

**Acquired Corporation**

2.01. As a material inducement to Surviving Corporation to execute this Plan and perform its obligations under this Plan, Acquired Corporation represents and warrants to Surviving Corporation as follows:

(a) Acquired Corporation is a non-profit corporation duly organized, validly existing, and in good standing under the laws of Texas, with corporate power and authority to own, lease, and operate property and carry on its business as it is now being conducted. A copy of the articles of incorporation and the bylaws of Acquired Corporation, including all amendments effective as of the date of this Plan, have been delivered to Surviving Corporation, and are complete and correct.

(b) Acquired Corporation has furnished Surviving Corporation with Acquired Corporation's audited balance sheet as of <u>December 31, 1998</u>, and the related audited statement of income for the twelve (12) months ending <u>December 31, 1998</u>. Acquired Corporation has also furnished its interim unaudited balance sheet ("Balance Sheet") as of <u>September 30, 1999</u> and the related unaudited statement of income for the <u>nine (9)</u> -month period ending on the Balance Sheet Date. The financial statements referred to in this subparagraph (b):

(i) Are in accordance with the books and records of Acquired Corporation;

(ii) Fairly represent the financial condition of the Acquired Corporation as of the described dates and the results of its operations as of and for the periods specified, all prepared in accordance with generally accepted accounting principles, applied on a basis consistent with prior accounting periods; and

(iii) Contain and reflect, in accordance with generally accepted accounting principles consistently applied, (A) reserves for all liabilities, and costs in excess of expected receipts and (B) all discounts and refunds in respect of service and products already rendered or sold that are reasonably anticipated and based on events or circumstances in existence or likely to occur in the future with respect to any of Acquired Corporation's contracts or commitments.

Specifically, but not by way of limitation, the Balance Sheet discloses in accordance with generally

---

**PLAN OF MERGER; PAGE 2**

accepted accounting principles all of the debts, liabilities, and obligations of any nature, whether absolute, accrued, or contingent, of Acquired Corporation at the Balance Sheet Date, including appropriate reserves for all taxes due at such date but not yet payable.

(c) All required federal, state, and local tax returns of Acquired Corporation have been accurately prepared and timely filed, and Acquired Corporation has paid all federal, state, and local taxes required to be paid with respect to the periods covered by such returns. Acquired Corporation has not been delinquent in the payment of any tax, assessment, or governmental charge. Acquired Corporation has never had any tax deficiency proposed or assessed against it.

(d) Since the Balance Sheet Date, there has not been any material adverse change in the financial condition, business, and assets or other properties of the Acquired Corporation that alters or impairs its ability to conduct its business.

(e) To its knowledge, no actions, suits, or other legal proceedings are pending or threatened against Acquired Corporation before or by any federal, state, or municipal court, department, board, bureau, or agency except actions seeking $ 5,000.00 _____ damages or less and except those listed below:

Surviving Corporation

2.02. As a material inducement to Acquired Corporation to execute and perform its obligations under this plan, Surviving Corporation represents and warrants to Acquired Corporation as follows:

(a) Surviving Corporation is a non-profit corporation duly organized, validly existing, and in good standing under the laws of Texas, with corporate power and authority to own property and carry on its business as it is now being conducted.

## ARTICLE 3

### TERMS, CONDITIONS, AND PROCEDURES PRIOR TO EFFECTIVE DATE

Submission to Members and Filing

3.01. This Plan will be submitted for approval separately to the members of the merging parties in the manner provided by the laws of Texas and the parties' respective bylaws and articles of incorporation.

PLAN OF MERGER; PAGE 3

Conditions Precedent to Obligations of Acquired Corporation

3.02. Except as expressly waived in writing by Acquired Corporation, all of the obligations of Acquired Corporation are subject to fulfillment of each of the following conditions on or before the Effective Date:

(a) The representations and warranties made by Surviving Corporation to Acquired Corporation in Article 2 of this Plan will be deemed to have been repeated on the Effective Date and will on that date be true and correct in all material respects. If Surviving Corporation discovers any material error, misstatement, or omission in those representations and warranties on or before the Effective Date, it must report that discovery immediately to Acquired Corporation and must either correct the error, misstatement, or omission or obtain a written waiver from Acquired Corporation.

(b) Approval of this Plan of Merger by the members of each corporation in accordance with the parties respective bylaws and the Texas Non-Profit Corporation Act;

(c) Surviving Corporation must have performed and complied with all applicable covenants and conditions required by this Plan on or before the Effective Date.

(d) Surviving Corporation must have performed and complied with all applicable agreements and conditions in this Plan prior to or on the Effective Date.

(e) Surviving Corporation must have delivered to the Acquired Corporation a certification dated the Effective Date, executed in its corporate name by its president or any vice president, certifying the satisfaction of the conditions specified in subparagraphs (a) and (b) of this paragraph 3.02.

(f) No action or proceeding by any governmental body or agency must have been threatened, asserted, or instituted to restrain or prohibit the carrying out of the transactions contemplated by this Plan.

(g) All corporate and other proceedings and actions taken in connection with the transactions contemplated and all certificates, opinions, agreements, instruments, and documents must be satisfactory in form and substance to Acquired Corporation.

(h) At the Effective Date, Surviving Corporation must have written authorization, or other approval in a form satisfactory to Surviving Corporation, that the contracts, leases, promissory notes and other outstanding obligations of the Acquired Corporation may be assumed by the Surviving Corporation including, but not limited to the following such contracts, leases, promissory notes and other outstanding agreements:

(i) That certain promissory note dated January 22, 1996 in original principal amount

PLAN OF MERGER; PAGE 4

of $ 400,000 executed by Acquired Corporation and payable to the order of Nations Bank of Texas;

(ii)     That certain agreement between Hide-A-Way Lake Club, Inc., Hide-A-Way Lake Home Owners, Inc., Hide-A-Way Lake, Inc., Lake Hide-A-Way, Inc., Crystal Systems Texas, Inc. and James W. Fair dated October 10, 1994;

(i) The Surviving Corporation has satisfied itself, in the exercise of its sole discretion and judgment that the merger qualifies as a tax-free merger for federal income tax purposes.

## Conditions Precedent to Obligations of Surviving Corporation

3.03.  Except as waived in writing by Surviving Corporation, all of the obligations of Surviving Corporation under this Plan are subject to fulfillment of each of the following conditions on or before the Effective Date:

(a) The representations and warranties of Acquired Corporation in this Plan and in any document delivered under this Plan are deemed to have been repeated in full on the Effective Date and must on that date be true and correct in all material respects. If Acquired Corporation discovers any material error, misstatement, or omission in those representations and warranties on or before the Effective Date, it must report that discovery immediately to Surviving Corporation and must either correct the error, misstatement, or omission or obtain a written waiver from Surviving Corporation.

(b) Approval of this Plan of Merger by the members of each corporation in accordance with the parties respective bylaws and the Texas Non-Profit Corporation Act;

(c) Acquired Corporation must have performed and complied with all applicable covenants and conditions in this Plan on or before the Effective Date.

(d) Acquired Corporation must have delivered to Surviving Corporation a certification, dated the Effective Date, executed in its corporate name by the president and secretary of Acquired Corporation and certifying the satisfaction of the conditions specified in subparagraphs (a) and (b) of this paragraph 3.03.

(e) No action or proceeding by any governmental body or agency will have been threatened, asserted, or instituted to restrain or prohibit the completion of the transactions contemplated by this Plan.

## Interim Conduct of Business; Limitations

PLAN OF MERGER; PAGE 5

3.04. (a) Except as limited by this paragraph 3.04, pending consummation of the merger, each of the parties to the merger will carry on its business in substantially the same manner as prior to the date of this Plan and will use its best efforts to maintain its business organization intact, to retain its present employees, and to maintain its good will in relationships with suppliers, members and others transacting business with the entity.

(b)  Except with the prior consent in writing of Surviving Corporation, pending consummation of the merger, Acquired Corporation will not:

(i) Create or issue any indebtedness for borrowed money.

(ii) Enter into any transaction other than those involved in carrying on its ordinary course of business.

### Expenses

3.05. (a) If the merger set forth in this Plan is consummated, Surviving Corporation will pay all costs and expenses of the merger.

(b) If the merger set forth in this Plan is not consummated, each party to this Plan will pay its own costs and expenses incident to the contemplated merger.

## ARTICLE 4

## MANNER AND BASIS OF CONVERTING MEMBERSHIPS

### Manner of Converting Memberships

4.01. The members of Acquired Corporation will surrender their memberships as of the Effective Date, and be members of Surviving Corporation without any fee, application or other process.

## ARTICLE 5

## DIRECTORS AND OFFICERS

### Directors and Officers of Surviving Corporation

5.01. The present board of directors of Surviving Corporation will continue to serve as its board of directors until the next annual meeting or until their successors have been elected and qualified.

5.02. All persons who on the Effective Date are executive or administrative officers of

---

PLAN OF MERGER; PAGE 6

Surviving Corporation will remain as officers of Surviving Corporation until its board of directors determines otherwise. Surviving Corporation's board of directors may elect or appoint additional officers as it deems necessary.

## ARTICLE 6

## ARTICLES OF INCORPORATION AND BYLAWS

### Articles of Incorporation of Surviving Corporation

6.01. (a) Article 1 of Surviving Corporation's articles of incorporation, is amended to read as follows: The name of the Corporation shall be HIDE-A-WAY LAKE CLUB, INC.

(b) Except as amended in subsection (a), Surviving Corporation's articles of incorporation will continue in full force until further amended as provided in the articles or as provided by law.

### Surviving Corporation's Bylaws

6.02. Surviving Corporation's bylaws, as existing on the Effective Date, will continue in full force until altered, amended, or repealed as provided in the bylaws or as provided by law.

## ARTICLE 7

## SURVIVAL OF WARRANTIES AND

## INDEMNIFICATION

### Nature and Survival of Representations and Warranties

7.01. All statements contained in any memorandum, certificate, letter, document, or other instrument delivered by or on behalf of Acquired Corporation, Surviving Corporation, or the members of any party to the plan of merger will be deemed representations and warranties made by such parties, respectively, to each other under this Plan. The representations and warranties of the parties and the members will survive for a period of three years following the Effective Date and will survive despite any inspections, examinations, or audits made on behalf of the parties and the members.

## ARTICLE 8

## ABANDONMENT

### Circumstances Allowing Termination and Abandonment

---

**PLAN OF MERGER; PAGE 7**

8.01. This Plan may be terminated and the merger may be abandoned at any time before the Effective Date, even after the articles of merger have been filed with the Texas secretary of state.

(a) The board of directors of any party to the merger may abandon this Plan before the articles of merger are filed with the Texas secretary of state.

(b) To abandon this Plan after the articles of merger have been filed with the Texas secretary of state, an officer or authorized representative must file a statement with the secretary of state executed on behalf of each party to the merger declaring that the Plan has been abandoned in accordance with the terms of this Plan and Article 5.03, Section B of the Texas Non-Profit Corporation Act. The statement must be filed before the Effective Date.

(c) Regardless of whether the articles of merger have been filed with the Texas secretary of state, this Plan may be abandoned under the following conditions:

(i) The number of members dissenting from the merger is so large that the merger is deemed inadvisable or undesirable in the opinion of the board of directors of either party to the merger.

(ii) Any material litigation or proceeding has been instituted or threatened against another party to the merger or any of its assets, that renders the merger inadvisable or undesirable in the opinion of the board of directors of either party to the merger.

(iii) Any legislation or administrative regulation or rule has been enacted that, in the opinion of the board of directors of either party to the merger, renders the merger inadvisable or undesirable.

(iv) After the date of execution of this Plan there has been, in the opinion of the board of directors of either party to the merger, any materially adverse change in the business or condition, financial or otherwise, of another party to the merger.

(c) At the election of Surviving Corporation's board of directors if, without the prior consent in writing of Surviving Corporation, Acquired Corporation has:

(i) Created or issued any indebtedness for borrowed money.

(ii) Entered into any transaction other than those involved in the ordinary course of business.

Notice of and Liability on Termination of Plan

8.02. If an election is made to abandon this Plan under paragraph 8.01:

(a) An officer of authorized representative of the party whose board of directors has made the election must give immediate written notice of the election to the other party to the merger.

PLAN OF MERGER; PAGE 8

(b) When notice has been properly effected as provided in subparagraph (a), and when an appropriate statement has been filed with the secretary of state as provided in section 8.01(b), this Plan will terminate and the proposed merger will be abandoned. Except for payment of its own costs and expenses incident to this Plan, there will be no liability on the part of either party to the merger as a result of the abandonment.

## ARTICLE 9

### ENFORCEMENT AND INTERPRETATION

### Further Assurances and Assignments

9.01. Acquired Corporation agrees that when requested by Surviving Corporation or by its successors or assigns, Acquired Corporation will execute and deliver or cause to be executed and delivered all deeds and other instruments necessary to consummate the transaction that is the subject of this Plan. Acquired Corporation also agrees to take or cause to be taken any further actions, assignments, or assurances that are necessary to vest, perfect, and conform title of Surviving Corporation to all the property, rights, privileges, powers, and franchises referred to in Article 1 of this Plan, and otherwise necessary to carry out the intent and purposes of this Plan.

### Notices

9.02. Any notice or other communication required or permitted by this Plan, with the exception of the filing of a statement of abandonment under paragraph 8.01(b), will be deemed to be given when deposited in the United States mails for transmittal by certified or registered mail, postage prepaid, or when deposited with a public telegraph company for transmittal, charges prepaid, addressed:

(a) In the case of Acquired Corporation, to: Hide-A-Way Lake Club, Inc., Attention: Bob Ammons, President, 302 Hide-A-Way Lane Central, Suite 100, Lindale, Texas 75771 or to any other person or address that Acquired Corporation may designate in writing on proper notice to Surviving Corporation.

(b) In the case of Surviving Corporation, to: Hide-A-Way Lake Home Owners, Inc., Attention: Bob Ammons, President, 302 Hide-A-Way Lane Central, Suite 100, Lindale, Texas 75771 or to any other person or address that Surviving Corporation may designate in writing on proper notice to Acquired Corporation.

### Entire Agreement and Counterparts

9.03. This instrument and any exhibits attached to and incorporated into the instrument contain the entire agreement between the parties with respect to the transaction contemplated by this Plan. It may be executed in any number of counterparts; however, all counterparts taken together will

**PLAN OF MERGER; PAGE 9**

constitute one original.

**Controlling Law**

9.04. The validity, interpretation, and performance of this Plan is controlled by and construed under the laws of Texas, the state in which this Plan is being executed.

Dated: April 27, , 1999.

HIDE-A-WAY LAKE CLUB, INC.,
a Texas non-profit corporation

BY: _R.C.Ammons_
NAME: _R. C, AMMONS_
TITLE: _PRESIDENT_

ATTEST:

BY: _W.R. Adams J._
NAME: _W. Roy Adams, Jr._
TITLE: _TREASURER_

HIDE-A-WAY LAKE HOME OWNERS, INC.,
a Texas non-profit corporation

BY: _R.C.Ammons_
NAME: _R. C. Ammons_
TITLE: _PRESIDENT_

ATTEST:

BY: _W.R. Adams J._
NAME: _W. Roy Adams, Jr._
TITLE: _TREASURER_

Hideaway\Merger\Plan.Merger.wpd

PLAN OF MERGER; PAGE 10

# EXHIBIT 6



# The State of Texas

## *SECRETARY OF STATE*

### CERTIFICATE OF MERGER

The undersigned, as Secretary of State of Texas, hereby certifies that the attached Articles of Merger of

HIDE-A-WAY LAKE CLUB, INC.
A Texas non-profit corporation
with
HIDE-A-WAY LAKE HOME OWNERS, INC.
A Texas non-profit corporation which changed its name to
HIDE-A-WAY LAKE CLUB, INC.

have been received in this office and are found to conform to law. ACCORDINGLY, the undersigned, as Secretary of State. and by virtue of the authority vested in the Secretary by law, hereby issues this Certificate of Merger.

Filed          December 29, 1999

Effective      January 1, 2000



STATE OF TEXAS          COUNTY OF SMITH
I hereby certify that this instrument was filed
on the date and time stamped hereon by me
and was duly recorded in the Official Public
records of Smith County. Texas.

JAN 1 2 2000

JUDY CARNES
COUNTY CLERK

*Elton Bomer*
*Secretary of State*

Ex. A (Affidavit) - Page 74

# EXHIBIT 7



# The State of Texas

## *SECRETARY OF STATE*

### CERTIFICATE OF MERGER

The undersigned, as Secretary of State of Texas, hereby certifies that the attached Articles of Merger of

HIDE-A-WAY LAKE CLUB, INC.
A Texas non-profit corporation
with
HIDE-A-WAY LAKE HOME OWNERS, INC.
A Texas non-profit corporation which changed its name to
HIDE-A-WAY LAKE CLUB, INC.

have been received in this office and are found to conform to law. ACCORDINGLY, the undersigned, as Secretary of State, and by virtue of the authority vested in the Secretary by law, hereby issues this Certificate of Merger.

Filed          December 29, 1999

Effective      January 1, 2000



*Elton Bomer*
*Secretary of State*



## TEXAS COMPTROLLER OF PUBLIC ACCOUNTS

CAROLE KEETON RYLANDER · COMPTROLLER · AUSTIN, TEXAS 78774

## CERTIFICATE OF ACCOUNT STATUS

THE STATE OF TEXAS
COUNTY OF TRAVIS

I, Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas,
DO HEREBY CERTIFY that according to the records of this office

HIDE-A-WAY LAKE CLUB INC

is exempt from payment of franchise tax and consequently is in good standing
with this office.

GIVEN UNDER MY HAND AND
SEAL OF OFFICE in the City of
Austin, this 27th day of
December, 1999 A.D.

*Carole Keeton Rylander*

CAROLE KEETON RYLANDER
Comptroller of Public Accounts

Taxpayer number: 12370294188
File number: 0026375101

Form 05-303(Rev.5-99/4)

# EXHIBIT 8



## MEMBERSHIP AGREEMENT

hereby apply for membership in Hide-A-Way Lake Club, Inc. and certify that I have purchased, or will purchase, upon acceptance, Address: 1383 *Hide-A-Way Lane West* Lot # 505 , Unit # 15 of Hide-A-Way Lake, Inc. or Lake Hide-A-Way, Inc. subdivisions. I submit, herewith, the Initiation Fee in the amount of $5900.00.

f approved, I agree to pay, in advance, monthly, quarterly or annually, such dues (currently $138.57 per month and garbage fee of $7.87 plus tax on all lots with a house) as the Board of Directors of the Club, from time to time, deems reasonably necessary. I further agree to pay, when due, other such charges, fees or assessments as may hereinafter be incurred by me as a member of such Club, or as may be assessed and/or charged by he Board of Directors of the Club. In the event membership dues, fees, assessments or charges are not paid within 30 days after the due date, I gree to pay to the Club 1-1/2% per month interest on the past due amount and that such interest will accrue continuously on any unpaid balance ntil full payment of all past due amounts.

also agree to pay for garbage collection (currently $7.87 + $.53 tax per month) which is included in the regular dues, assessments and other harges. I understand the garbage collection fee does not apply to vacant lots, but is applicable to all lots on which a dwelling is occupied.

certify that I have read and understand the Bylaws, rules and regulations of the Club and agree to be bound by same as they now exist or may ereafter be amended by the Board of Directors of the Club. **I UNDERSTAND AND AGREE THAT CLUB PRIVILEGES CAN BE EVOKED FOR VIOLATION OF THE BYLAWS, RULES AND REGULATIONS.** I agree to be responsible for the actions of my guests nd members of my family when using Club facilities.

hereby agree and understand that the attached Declaration of Covenants, Conditions and Restrictions (Deed Restrictions), in addition to the strictions recorded in the Land Records and/or Plat Records of Smith County, Texas, affecting the lot described above, are an integral and nding part of my agreement and contract with the Club.

Submitted this 21st day of November , 20 04 .

GNATURE OF MEMBER APPLICANT

S.S. NUMBER

GNATURE OF MEMBER APPLICANT

S.S. NUMBER

ATE OF TEXAS ]
)UNTY OF SMITH ]

:FORE ME, a notary public, on this day personally appeared *Louis C. Okon and Melanie Keys Okon* , known to me to be person(s) whose name(s) is subscribed to the foregoing document.

.TE: _____

JOAN A. HAYES
Notary Public, State of Texas
My Commission Expl. 06-26-2007
(SEAL)

Notary Public

Commission Expires: _____

# EXHIBIT 9

**Instructions to Hideaway Voters**

Please find enclosed the following materials:

- Two ballots. (Hideaway Club Bylaws provide for two votes per membership.)
- A single "Blue Return Envelope".

Instructions: Mark your preference of "AGREE" or "DISAGREE" for each of the two Proposed Rule Changes that are listed on the ballot.

Sign your ballot. Any ballot not signed by the member will be considered a "spoiled ballot" and will NOT be counted in the election.

Place your marked ballots inside the enclosed blue "ballot" envelope, put a stamp on the envelope and put it in the mail or just deposit it in the ballot box in the lobby of the Member Services building. Ballots must be received by 4:00 pm on February 2nd, 2024.

---

**BALLOT**   3593
**HIDE-A-WAY LAKE CLUB, INC.**
**Rules Change Referendum**

**SELECT "AGREE' OR "DISAGREE" FOR THE FOLLOWING TWO RULE CHANGE PROPOSALS**

Wake surfing and the artificial enhancement of waves by any means is prohibited on all Hideaway Lakes.

[ ]   Agree

[ ]   Disagree

Alcohol is prohibited in the Adult Pool Area.

[ ]   Agree

[ ]   Disagree

*SIGNATURE:*

TO BE VALID, THE BALLOT **MUST BE SIGNED** AND RECEIVED IN THE ENCLOSED BLUE ENVELOPE BY 4:00 p.m. FRIDAY, FEBRUARY 2, 2024

BALLOTS MAY MAILED OR PLACED IN THE BALLOT BOX THAT IS LOCATED AT THE ADMINISTRATION OFFICE

---

**BALLOT**   3594
**HIDE-A-WAY LAKE CLUB, INC.**
**Rules Change Referendum**

**SELECT "AGREE' OR "DISAGREE" FOR THE FOLLOWING TWO RULE CHANGE PROPOSALS**

Wake surfing and the artificial enhancement of waves by any means is prohibited on all Hideaway Lakes.

[ ]   Agree

[ ]   Disagree

Alcohol is prohibited in the Adult Pool Area.

[ ]   Agree

[ ]   Disagree

*SIGNATURE:*

TO BE VALID, THE BALLOT **MUST BE SIGNED** AND RECEIVED IN THE ENCLOSED BLUE ENVELOPE BY 4:00 p.m. FRIDAY, FEBRUARY 2, 2024

BALLOTS MAY MAILED OR PLACED IN THE BALLOT BOX THAT IS LOCATED AT THE ADMINISTRATION OFFICE

HIDE-A-WAY LAKE CLUB, INC.
101 HIDE-A-WAY LANE CENTRAL
HIDEAWAY, TEXAS 75771



HIDE-A-WAY LAKE CLUB, INC.
101 Hide-A-Way Lane Central
Hideaway, Texas 75771

**BALLOTS**

# EXHIBIT 10

## RESULTS OF THE BOARD REFERENDUM BALLOT
### OCTOBER 2023

Wake surfing and the artificial enhancement of waves by any means is prohibited on all Hideaway Lakes.                    Agree   Disagree

Alcohol is prohibited in the Adult Pool Area.   Agree   Disagree

---

We, the undersigned, serving as election committee, submit the following certified voting results for the Hide-A-Way Lake Club Referendum:

Wake surfing and the artificial enhancement of waves by any means is prohibited on all Hideaway Lakes.

Agree _1603_                    Disagree _683_

Alcohol is prohibited in the Adult Pool Area.

Agree _1006_                    Disagree _1262_

Respectfully submitted and certified:

Committee Members:

_Mary McNeese_
Election Chairperson, Mary McNeese

_Jerry Mullins_
Board President, Jerry Mullins

Mary McNeese
Tom Hickey
Cheryl Smyth
Vivian Lawson
Margaret McCann

STATE OF TEXAS
COUNTY OF SMITH

Subscribed and sworn to before me, the undersigned authority, on this the 2nd day of February 2024.

_____                    _6/26/27_
Notary Public                    Commission Expires

JOAN A HAYES
Notary Public
STATE OF TEXAS
ID#1021356-5
My Comm. Exp. June 26, 2027

Ex. A (Affidavit) - Page 84

## Referendum Election 2024 - Summary of Ballots

| Ballots Assigned and Mailed | | |
|---|---|---|
| 0001-0034 | * 2000 (& 1499) | 3087-3386 |
| | 2001-2500 | 3387-3542 |
| 0037-0500 | 2501-2654 | 3543-3546 |
| 0501-1000 | 2655-2682 | 3547-3564 |
| 1001-1328 | 2683-2800 | 3565-3572 |
| | 2801-3086 | 3573-3590 |
| 1331-1392 | | 3591-3592 |
| 1393-1492 | | |
| 1493-1498 | | 3595-3598 |
| * 1499 (& 2000) | | |
| 1500-1899 | | |
| 1900-1999 | | |
| | | |
| | | |
| | | |
| 1996 | 1086 | 510 |

| Not Assigned | | |
|---|---|---|
| 0035-0036 | 2 | Not used |
| 1329-1330 | 2 | Not used |
| 3593-3594 | 2 | Not used |
| 3599-3700 | 102 | Not used |
| | 108 | |

| Total Original ballots printed = 3700 | |
|---|---|
| 3592 | Mailed |
| 108 | Not assigned |

| Total Alternate Ballots printed = 80 | |
|---|---|
| 16 | Assigned |
| 54 | Not assigned |

| Valid Ballots Rec'd | |
|---|---|
| 550 | |
| 1650 | |
| -1 | spoiled |
| 50 | |
| 29 | |
| | |
| 2278 | |

| Summaries | |
|---|---|
| 3592 | Ballots mailed |
| 2278 | Valid Ballots Received |
| 36 | Spoiled Ballots Received |
| 64% | % Return (Rec'd/Mailed) |